No. 17,142.

## LEWIS v. THE STATE.

SUPREME COURT PRACTICE.—*Sufficiency of Evidence.*—*Reversal.*—The appellate tribunal will not reverse a cause on the mere weight of the evidence, if there is evidence tending to support the verdict as to all material facts.

JURY.—*Competency to Serve as Juror.*—*Opinion Formed and Expressed.* —*Judicial Discretion.*—Where a juror on his *voir dire* states that he has formed or expressed an opinion as to the guilt or innocence of the defendant, in a criminal action, but that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court may, if satisfied that such juror is impartial and will render an impartial verdict, permit him to serve in the case, and the exercise of such discretion will not usually be reviewed on appeal.

MISCONDUCT OF COUNSEL.—*Argument to Jury.*—*Prosecuting Attorney.*— *Criminal Law.*—Where the prosecuting attorney, in his closing argument to the jury, said: "It is the history of criminal prosecutions, that if a defendant does not plead guilty before the court, he always goes upon the witness stand and denies the charge," to which statement the defendant, at the time, objected, and moved the court to withdraw the same from the jury, which motion the court overruled, to which ruling the defendant excepted, the defendant having testified in his own behalf, in the case, denying specifically any participation whatever in the crime with which he was charged,—such statement of the prosecuting attorney, under the circumstances, amounted to reversible error.

From the Fayette Circuit Court.

*G. C. Florea* and *L. L. Broaddus,* for appellant.

*A. G. Smith,* Attorney-General, *F. W. Cady* and *D. L. Cady,* for State.

DAILEY, J.—At the March term, 1893, of the Fayette Circuit Court, the appellant, John Lewis, was indicted jointly with William Calvin, Morton Dixon and Peter Crawley, for shooting, in the night time, one Walter S. Jewiss, with intent to kill and murder him. The appellant had a separate trial by jury, was convicted and sen-

Lewis *v.* The State.

tenced to be confined in the State prison for a period of two years and to pay a fine of one cent. He appeals to this court, and assigns but one error—the overruling of his motion for a new trial. The appellee, by her prosecuting attorney, joins in error.

Five reasons are assigned by appellant for a new trial. The first three are as follows:

"1st. Because the verdict of the jury is contrary to law.

2d. Because the verdict of the jury is not sustained by sufficient evidence.

3d. Because the verdict of the jury is contrary to the evidence."

As to these specifications appellant admits that he is confronted by the rule that this court will not reverse a cause on the mere weight of the evidence, if there is evidence tending to support the verdict of the jury as to all the material facts. He does not question the record showing that the injured party testified that the appellant was present aiding and abetting one Haumesser in the felonious assault, and this alone puts in the record some evidence to sustain the verdict and brings him within the rule. But counsel complain that this is a harsh judicial rule. This is but a court of error, has nothing of the case before it except the record, in which the words of one witness mean just the same as the words of another witness.

The court and jury, in the court below, saw the witnesses, heard their voices, observed their manner of testifying, noted the degree of intelligence they possessed, and their fairness or bias for or against the accused, and many signs of truth or falsehood which can never appear in the record, and the decision comes to us with so many presumptions in its favor that it must clearly appear that

substantial justice has not been done, or the ruling should be affirmed.

The bill of exceptions, which is in the record, contains the evidence in the cause, and, besides the testimony of the injured party tending to establish all the material facts necessary to a conviction, there is evidence going to show previous threats on that night, by appellant against the prosecuting witness; that appellant was in search of him shortly before the commission of the act complained of, and was pursuing Jewiss while the latter was on his way home, when the shots were fired. There is evidence from which it could be fairly inferred that he and his associates on that occasion were engaged in the felonious assault, agreeably to a common design and for a common purpose, viz., to take the life of the person assailed.

To use the language of this court in *Siebert* v. *State*, 95 Ind. 471 (479): "There is no clear defect, no link gone or too weak in the chain of facts which tend to establish the appellant's guilt of the felony, wherewith he was charged."

In *Cox* v. *State*, 49 Ind. 568 (572), the court said: "The jury found the verdict upon the evidence, and the court has sanctioned it by its judgment; and, though the evidence does not completely satisfy us, we can find no error in the law, and know of no judicial rule by which we can reverse the judgment pronounced below."

This doctrine is recognized in *Siebert* v. *State, supra; Kelly* v. *State*, 64 Ind. 326; *Christy* v. *Holmes*, 57 Ind. 314, and in many other cases.

The fourth reason for a new trial is as follows: "Because one of the jurors in said cause, viz., Joel Foster was guilty of misconduct in this, to wit: The said juror on his *voir dire* examination, in answer to questions touching his competency to sit as a juror in said cause,

propounded by the defendant, answered, 'that he had formed or expressed no opinion on the merits of said cause,' which statement is now fully shown by the statement of Kate Johnston, the stenographer in said cause, filed herewith, made a part hereof and marked Exhibit A; that in fact said juror had formed and expressed an opinion on the merits of said cause, and was prejudiced and biased against the defendant, as shown by the affidavit of Anna Eisenhut, filed herewith, made a part hereof, and marked 'Exhibit B'; that defendant did not know that said juror had so formed and expressed such opinion until after the close of the trial, and could not have discovered the same by reasonable diligence; that he and his counsel made all effort in their power to ascertain whether the jurors in said court were biased or prejudiced against him, and that he was misled and surprised by the answers of said juror, Joel Foster, and would not have accepted him as a juror in said cause had he known that he had formed and expressed an opinion, as shown by the affidavit of Anna Eisenhut.''

In support of the above charge of misconduct, is the following affidavit:

''Comes now the undersigned, Anna Eisenhut, who, being duly sworn, says: That she is a resident freeholder of the city of Connersville, Fayette county, Indiana, —— years of age, and resides on South Grand avenue, in said city; that she is acquainted with one Joel Foster, who sat as a juror in the trial of the cause of the State of Indiana *v.* John Lewis, in the Fayette Circuit Court at the May term thereof, 1893; that two or three days before said cause was called for trial and said trial commenced in said court, she had a conversation with said Joel Foster in regard thereto; that said conversation took place in the street in front of affiant's residence in

said city of Connersville; that said conversation was, in substance, as follows:

"Affiant understood said Foster to make a complaint of some matter the exact nature of which she did not understand. Affiant said to Joel Foster, 'what is the matter?' Said Foster replied: 'I have been summoned on the jury to try those scalawags that waylaid Sandy Jewiss (meaning Walter S. Jewiss, the prosecuting witness in said cause); they ought all to go up for fifty years.' Affiant then said to Foster: 'You would not be hard on them, Mr. Foster, would you?' to which Foster replied: 'Yes, they ought to go up for fifty years;' that said statements and conversation were so had with affiant by said Joel Foster of and concerning the persons then charged and indicted with assault and battery on Walter S. Jewiss, with intent to kill·the said Jewiss, the names of whom affiant did not then know, but whose names she has since learned are John Lewis, William Colvin, Mort Dixon and Peter Crawley. And further affiant saith not.                                    ANNA EISENHUT."

To this affidavit the proper jurat was attached.

In reply to the above, the State filed the following counter affidavit of said Foster:

"Joel Foster, who being duly sworn upon his oath, deposes and says: That he was one of the regular empaneled jurors who sat upon the trial of said cause; said affiant further states that when he was being examined touching his qualifications as a juror he stated that he had formed or expressed an opinion, and said juror said that he had, but upon further examination said juror states that he was asked by the Honorable Ferdinand S. Swift, the judge who sat upon the bench in the trial of said cause, 'that notwithstanding any opinion you may have formed or expressed, could you try the cause according to the law and evidence, and render a

fair and impartial verdict?' To which question said juror
replied 'that he could,' and said juror further stated that
no opinion that he had formed had any impression upon
his mind during the trial of said cause. Said affiant
further states that he is acquainted with Anna Eisen-
hut, the affiant in the affidavit in support of a new trial
in the above entitled cause, and said juror states that he
never expressed to said Eisenhut any opinion concern-
ing the guilt or innocence of the defendant, John Lewis,
prior to the trial of said John Lewis; and that at the
time said Eisenhut states that she had the conversation
with this affiant, he did not know the defendant, John
Lewis, or any of his co-defendants, or Walter Jewiss,
and did not know that any of said parties were in the
county jail, or charged with any crime at all. And fur-
ther affiant saith not."

This affidavit is signed by the juror, Foster, and the
jurat of the officer administering the oath is attached
thereto.

Kate Johnston, the official reporter, in substance, states
that she was not present during the entire examination of
the jury; that she took no notes of the testimony touch-
ing the qualifications of Joel Foster; that she does not
know him, and has no recollection of his having been
upon the jury; that it has been her practice as a stenog-
rapher, upon the examination of jurors, not to take notes
touching their qualifications unless the juror states that
he has formed and expressed an opinion, when, if pres-
ent, she makes a note of the fact.

It is conceded by counsel for the appellant that the
retention of such juror was discretionary with the court,
under section 1793, R. S. 1881, which provides "that
the court, if satisfied that he is impartial, and will ren-
der such verdict, may, in its discretion, admit him as
competent to serve in such cause." It does not appear

that the opinion formed or expressed by the juror, Foster, prior to the trial, was founded upon conversations with witnesses to the transaction, or reading reports of their testimony, or hearing them testify.

The juror shows by his counter-affidavit that upon being interrogated by the court on his *voir dire* he stated that he had formed or expressed an opinion as to the guilt or innocence of the defendant, but that he felt able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence.

If the court was satisfied that he was impartial, and would render such verdict, it was empowered to admit him to serve in the case. The exercise of this power will not usually be reviewed by the Supreme Court. *McCulley* v. *State*, 62 Ind. 428; *Holloway* v. *State*, 53 Ind. 554; *Achey* v. *State*, 64 Ind. 56; *Walker* v. *State*, 102 Ind. 502; *Stephenson* v. *State*, 110 Ind. 358.

In *Holloway* v. *State*, *supra*, this court said: "Where a motion for a new trial in a criminal action is based upon alleged misconduct of a juror, in falsely stating, on his examination under oath as to his competency as a juror, that he had not formed or expressed any opinion as to the guilt or innocence of the defendant, and, such alleged misconduct being controverted, the evidence, either oral or written, on this point to the court in connection with the motion, is conflicting, the question of such alleged misconduct should be determined upon the weight of the evidence; and the Supreme Court will respect the conclusion arrived at, as it does the decision of a question of fact upon conflicting evidence in a civil action."

We also cite *Coryell* v. *Stone, Exr.*, 62 Ind. 307; *De Priest* v. *State, ex rel.*, 68 Ind. 569; *Hodges* v. *Bales*, 102 Ind. 494; *Dill* v. *Lawrence*, 109 Ind. 564; *Elliott* v. *State*, 73 Ind. 10 (14).

"The court has heard the witnesses, observed the manner in which they testified, and, upon a pure question of fact, has given a decision which is not plainly erroneous. Hence we are not inclined to disturb its conclusions." *Holloway* v. *State, supra*, at p. 560.

Appellant's fifth and last reason for a new trial is alleged misconduct of the prosecuting attorney in saying to the jury, in his closing argument: "It is the history of criminal prosecutions, that if a defendant does not plead guilty before the court, he always goes upon the witness stand and denies the charge."

To this statement the appellant, at the time, objected, and moved the court to withdraw the same from the jury, which motion the court overruled, to which ruling the defendant excepted, and at once filed his bill of exceptions.

"The conduct of the argument is a matter much within the discretion of the trial court, and it is only where there is an abuse of discretion that appellate courts will interfere." *Combs* v. *State*, 75 Ind. 215 (220); *Read* v. *State*, 2 Ind. 438; Hilliard on New Trials, 225.

It is not immaterial assertions of counsel in their argument that can constitute ground for reversal. Courts ascribe to juries ordinary intelligence and common fairness, and do not ignore their verdicts because attorneys may have indulged in assertions unsupported by evidence. It is the duty of the presiding judge to restrict the argument upon the facts to such as are established by, or inferable from, the evidence; but in doing this, he should not abridge the freedom of debate by depriving counsel of the right to enforce his argument by illustration and example. It is only in cases where the matters erroneously stated by counsel are calculated to do the accused injury by reason of their weight and importance, that this court should adjudge a reversal.

Where it is of such a material character as makes it probable that it misled the jury to the prejudice of the accused, it becomes the duty of the court to reverse the judgment.

On the trial of this cause, the defendant appeared upon the witness stand and testified in his own behalf concerning the material facts in the case, denying specifically any participation whatever in the crime with which he was charged.   If the jury were disposed to believe his statement, it constituted a full and complete defense and entitled him to an acquittal of the charge.

Counsel had a right to illustrate his argument, and it was his privilege to make all necessary comments upon the evidence adduced, and draw all proper inferences therefrom, but the use of the language attributed to him: "It is the history of criminal prosecutions, that if a defendant does not plead guilty before the court, he always goes upon the stand and denies the charge," invaded the rights of the defendant, was such an abuse of the privilege of counsel as can not be excused without ignoring all rules pertaining to the fair administration of justice.   It, in effect, told the jury that a person accused of a crime who did not plead guilty always perjured himself, if necessary, to secure an acquittal, and that neither law nor experience warranted the jury in attaching any weight to his testimony.

In making this remark, the prosecuting attorney abandoned the evidence and the wide range of illustration which it affords, and stated a proposition without any proof to support it.   This statement is not in the line of mere denunciatory argument or of legitimate comment on the interest of the defendant in the result of the prosecution.   The defendant, as was his right, contested the question of his guilt.

In this contest it was incumbent on the State to establish its accusation against him, by evidence admitted through the legitimate channel. It had no right to ask for a conviction upon assertion, or evidence from any source not thus admitted, and it was in the highest degree unfair that the attorney for the State put the weight of his own personal knowledge into the scale, to aid in the prosecution. If a conviction is had in any case, it is essential it should be secured according to the facts in the case legally produced to the jury, agreeable to established rules in criminal proceedings, and not by the assertions of counsel as to his knowledge of the habits of persons to forswear themselves. A person charged with a felony is entitled to the benefit of an impartial trial by jury, and with the preservation of these rules and the maintenance of this right, the courts and their officers are charged, and must see, that they are not violated.

Counsel, who made this remark, was a law officer of the court, engaged, at the time, in the performance of an official duty. It will be presumed that he is a man of influence with the jurors of his circuit, who would place reasonable credence in his statements, made in the argument of a case, and that he made the declaration, expecting it to be believed and relied upon by them in determining the question of the defendant's guilt. It is one well calculated to mislead, bias, and prejudice the jury, in the consideration of the defendant's evidence, and will be presumed to have been so intended by him. Where the privilege of argument has been clearly violated to the injury of the objecting party, there should be a reversal of the action, unless such misconduct is sufficiently counteracted by the trial court. *Brow* v. *State*, 103 Ind. 133; *Nelson* v. *Welch*, 115 Ind. 270; *Troyer* v. *State, ex rel.*, etc., 115 Ind. 331; *Campbell* v. *Maher*, 105

Ind. 383; *Bessette* v. *State*, 101 Ind. 85; *Schlotter* v. *State, ex rel., etc.,* 127 Ind. 493.

It is the law that when the party who is injured by the wrong calls for the intervention of the court by an objection, it will not do for the court to remain silent, leaving the matter of misconduct with the offending party and the jury. The court is bound to interpose when so called upon, and if an improper and injurious statement has been made without excuse, the effect of it should be erased from the minds of the jury then and there, by an emphatic and explicit admonition from the court.

The jury should be made to understand that in making the statement counsel violated the propriety of his position, and that if they did not wholly disregard it they would violate their duty as jurors.

The record discloses that the court, in this instance, remained silent and refused to interfere when the objection was made.

Upon examination of the evidence incorporated in the record, we can not say that such departure and misconduct did not injure the substantial rights of the defendant.

Judgment reversed, with instructions to grant a new trial, and the clerk is directed to issue the proper order for the return of the prisoner.

Filed April 5, 1894.