ROBERT GARRETT *v.* STATE OF INDIANA.

[No. 2-1072A68. Filed August 30, 1973. Rehearing denied October 1, 1973. Transfer denied November 20, 1973.]

*Terrence P. Pehler, Kammins, Lemond, Carson & Stewart,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Robert Garrett (Garrett) appeals from his conviction by a jury of First Degree Burglary and Robbery in Marion Criminal Court, Division Three, claiming the Prosecuting Attorney improperly injected his opinion of Garrett's guilt into the proceedings and insufficient evidence to convict.

We affirm.

## FACTS

The facts and evidence, when viewed most favorably to the State and the judgment of the court below, reveal that:

Garrett was charged with First Degree Burglary and Robbery in an Affidavit filed in Marion County Criminal Court on January 17, 1972 and was tried and convicted on March 29, 1972.

During voir dire, the Deputy Prosecuting Attorney made the following statement:

"Mr. Kearby, just to clear one thing up sir, I, also take an oath when I went on the Prosecutors Staff as you would take when you go on this jury and as you took as a prospective juror, and I do not presume this Defendant to be innocent; I presume him to be guilty, and I would intend, and do in fact intend, to present the evidence in this case so as to show his guilt. If I presumed him to be innocent or have any belief whatsoever in his innocense it would be my job and in fact by duty not to prosecute. Do you understand that?"

Defense counsel's objection and Motion For A Mistrial[1] were overruled and denied by the trial court.

Before the trial, the Judge gave Preliminary Instructions to the jury, which read in part:

### "INSTRUCTION NUMBER 8

"The law presumes the defendant in this case to be innocent of the commission of any crime, and this presumption continues throughout the trial, step by step. ". . . ."

No further incidents occurred after the trial began involving statements by the Prosecuting Attorney as to his belief in or presumption of Garrett's guilt.

---

1. Our disposition of the issues in this case does not require us to determine whether a Motion For A Mistrial is the proper motion to withdraw consideration of a criminal cause in voir dire proceedings prior to the time a jury is sworn.

The evidence introduced at trial would indicate that on the evening of November 6, 1970, Laura Sauer was in her home in Marion County, when two men wearing ski masks entered the home and instructed her to lead them to her husband's safe. She complied, but the two men, with the aid of a third man who subsequently entered the home, were unable to open the safe. Mrs. Sauer testified that one of the men was armed. Ultimately the masked men took the entire safe and its contents from the Sauer residence.

Testimony of Mr. Sauer revealed that the safe contained $5,500 to $6,000 in coins which constituted the receipts of Mr. Sauer's vending machine company.

Charles R. Flora testified that he had committed the robbery of the Sauer residence on November 6, 1970, and that he was assisted by Garrett and one Kenneth Taylor. Flora had been arrested in connection with a separate incident, and was testifying against Garrett as an accomplice who had been granted immunity from prosecution. During cross-examination, Flora admitted to several prior convictions and extensive criminal activity. His testimony contained certain inconsistencies as to matters unrelated to the participation of Garrett in the robbery.

Flora testified that the three men removed the safe and two bags of loose change from the Sauer home, took the Sauers' car, and proceeded to the Flora home. After disposing of the Sauers' car, Flora, Garrett, and Taylor spent the rest of the night rolling the change acquired in the robbery in wrappers.

Mrs. Flora subsequently testified and substantiated her husband's testimony in that she was in her home on the night of November 6, 1970, when Flora, Garrett, and Taylor came in at 11 P.M. She saw the three men bring in an Army duffel bag which contained a large number of nickels, dimes, and quarters. She testified that after obtaining money

wrappers, the men spent the rest of the night working in the living room.

The jury returned a verdict of guilty on both the First Degree Burglary and the Robbery charge and Garrett was sentenced to terms of from ten to twenty years on both counts—and now appeals.

## ISSUES

Garrett presents two issues in his appeal:

ISSUE ONE: Did the trial court's refusal to grant a mistrial or admonish the jury after objection by counsel to the Prosecutor's statement of his presumption of Garrett's guilt, constitute reversible error?

ISSUE TWO: Was the verdict of the jury supported by sufficient evidence?

As to ISSUE ONE, Garrett contends that the statement by the Prosecutor destroyed the presumption of innocence to which he was entitled and denied him a fair trial.

The State answers that the statement by the Prosecutor merely established the State's position of what it intended to prove, and did not unfairly prejudice Garrett.

As to ISSUE TWO, Garrett argues that certain inconsistencies in the testimony of the witnesses so impeached their evidence that it had no probative value, and that therefore the decision of the jury was not supported by sufficient evidence.

The State answers that, even if the testimony could be considered inconsistent, such matters go only to the weight of the evidence, and that this court on appeal may not reweigh the evidence.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that the statement of the Prosecutor as to his belief in Garrett's guilt in these circumstances did not constitute reversible error.

A statement by the prosecuting attorney that he presumes or believes a defendant to be guilty must be examined in context.

While impanelling the jury, the Deputy Prosecutor bespoke himself thusly:

> "Mr. Kearby, just to clear one thing up sir, I, also take an oath when I went on the Prosecutor's Staff as you would take when you go on this jury and as you took as a prospective juror, and I do not presume this Defendant to be innocent; I presume him to be guilty, *and I would intend, and do in fact intend, to present the evidnece in this case so as to show his guilt.* If I presumed him to be innocent or have any belief whatsoever in his innocence it would be my job and in fact my duty not to prosecute. Do you understand that?" (Emphasis supplied.)

Defense counsel immediately moved for a mistrial, and after the jury was excused this colloquy took place in which counsel expounded on their views as to the prejudicial effect of the foregoing statement:

*Defense counsel*

> "As to this particular Motion for Mistrial it is the law of the State of Indiana, as I understand it, that a Prosecutor may not make inflammatory remarks to the jury in final argument. He may not make inflammatory remarks to the jury at all. He may not express an opinion as to the guilt or innocence of a Defendant any more than the Court can do so. If a Prosecutor stands on Final Argument and states that he feels that the Defendant is guilty he is making such an inflammatory remark and so much more true should then be on Vordire [*sic*] before a jury then is even picked."

*Deputy Prosecutor*

"Your Honor, to state my position on that, Mr. Pehler, on Vordire [*sic*] made the statement that it was his job, and the Court's job, the Jury's job and the Prosecutor's job to presume this man innocent. The State's position, Your Honor is that if, in fact, the Prosecutor's office or myself, as a member of that office presume that man to be innocent then, in fact, have evidence that he was innocent, or had no evidence whatsoever of guilt, that we, in fact, must dismiss the charges, and could, in fact, not prosecute. Our only position is that through Mr. Pehler's statement, was in reply to his statements to this prospective jury that, in fact, I presumed him innocent. I think if I presumed him innocent I would certainly be violating the oath I took as a representative of the State of Indiana in attempting to prosecute this man and I certainly do not feel that is in any way inflammatory. I think it is rather obvious to a jury, or certainly becomes so during the period of trial that certainly somebody primarily the prosecutor must believe the man is guilty or he would not, in fact, be prosecuted. I see no—I do not feel that is inflammatory in any way and could only state that once again I would be derelict in not only my duty to my oath but to my profession if I thought this man to be innocent to attempt to prosecute him."

After the Motion for Mistrial was denied, Defense Counsel then asked the court to admonish the jury to disregard the personal opinions of the Prosecutor. This relief was also denied, and the trial proceeded. No similar incident occurred after the trial began.

The proper function of counsel in a voir dire proceeding is to assist in the impanelling of an impartial jury and the trial judge has considerable latitude in keeping the questioning within reasonable bounds. *Roby* v. *State* (1938), 215 Ind. 55, 17 N.E.2d 800; *Martin* v. *Lilly* (1919), 188 Ind. 139, 121 N.E. 443; *State* v. *Manley* (1969), 54 N.J. 259, 255 A.2d 193.

Counsel in an excess of zeal may overstep these bounds. A considerable body of law owes its genesis to statements by prosecutors, usually in argument, as to the defendant's guilt:

"Statements by a prosecuting attorney in argument to the effect that he would not prosecute a case, or the case at bar, unless he believed the defendant to be ██ guilty, have generally been held objectionable, and in some instances prejudicial. This holding has been based on the ground, inter alia, that such statement implies a belief based on the attorney's independent investigation, and not solely on the evidence produced at the trial." 50 A.L.R.2d 766, 787-788.

The danger of prejudice to the defendant by such statements is they may imply that the prosecutor has independent personal knowledge of facts other than those introduced at trial.

Or, the statement may do more than imply personal knowledge—it may blatantly so state, as was true in *Brow* v. *State* (1885), 103 Ind. 133. The court reversed the defendant's conviction in light of this prejudicial statement by the prosecutor:

" 'That saloon-keepers always had a gang organized to swear them through, and that the jury should not believe a saloon-keeper under oath; that only a short time ago a saloon-keeper had sold liquor to a man and made him drunk, and he froze to death; that all saloon-keepers were alike, and that they would swear to lies; that he knew personally the saloon-keeper in this case, and that he was guilty of this, and he was sure of other crimes; . . .' " 103 Ind. at 136, 2 N.E. at 297-98.

A like result was reached in *Jackson* v. *State* (1888), 116 Ind. 464, 19 N.E. 330, due to the prosecutor's comment that:

" 'Washington Jackson's wife is broken-hearted over his conduct in connection with this Lowe woman. I know what I am talking about. I have been to Greenfield, and heard the evidence before the grand jury, and I know what these people think about this case.' " 116 Ind. at 466, 19 N.E. at 331.

Yet, a statement by the prosecutor declaring the defendant's guilt based upon the evidence is permissible:

"It is generally held, accordingly, subject to certain exceptions hereinafter noted, that statements by the prosecutor,

in argument, indicative of his opinion, belief, or knowledge as to the guilt of the accused, where made as a deduction or conclusion from the evidence introduced in the trial, are permissible and unobjectionable." 50 A.L.R.2d 775.

The Code of Professional Responsibility adopted by our Supreme Court incorporates this idea:

" . . . .

. "(c) In appearing in his professional capacity before a tribunal, a lawyer shall not:

. . . .

(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein." DR 7-106.

In 1953 the U. S. Seventh Circuit Court of Appeals, in a case arising from the Northern District of Indiana, recognized that allegations of guilt not based on personal knowledge of the prosecuting attorney are permissible. The statement was:

"If I, in my own mind, thought for one minute that these defendants were not parties to this case, I certainly would not have the courage to stand up here and argue before you that they were guilty. It is never our intention to prosecute and try innocent men."

In affirming the conviction, the court held, "This statement was far short of alleging that the speaker had personal knowledge of facts showing defendant's guilt." *United States* v. *Battiato* (7th Cir. 1953), 204 F.2d 717, *cert. denied,* 346 U.S. 871, 74 S.Ct. 118.

A similar question faced the Sixth Circuit in *Henderson* v. *United States* (6th Cir. 1955), 218 F.2d 14, *cert. denied,* 349

U.S. 920, *reh. denied,* 349 U.S. 969. There, the prosecutor stated:

" '. . . I took an oath. You took an oath. I am doing my duty. I am doing it. I am going to do it. It may not be big—but I am going to do—hot or cold—if I believe a man guilty. And if I don't believe he is guilty, no one is going to make me stand here and prosecute him—not going to do it. But if I believe he is, I am going to put witnesses on here.\*\*' "

The court concluded that:

"It is not misconduct on his part to *express* his individual belief in the guilt of the accused if such belief is based solely on the evidence introduced and the jury is not led to believe that there is other evidence, known to the prosecutor but not introduced, justifying that belief." (Original emphasis.) 218 F.2d, at 19.

Some courts have adopted a presumption that declarations by the prosecutor that the defendant is guilty must be deemed to be based on personal knowledge of the prosecutor and therefore based on facts which, in part at least, do not appear in evidence, *e.g., People* v. *Edgar* (1917), 34 Cal. App. 459, 167 P. 891. Without some hint or inference of personal knowledge on the part of the prosecutor, the jump from a statement or belief as to a defendant's guilt by a prosecutor to a presumption that he speaks from personal knowledge dehors the record, requires judicial agility of which we are incapable.

The role of the prosecutor has often been defined and needs no repetition here other than to observe that, like defense counsel, an excess of zeal may thwart the selection of an impartial jury capable of rendering a defendant a fair trial. See: *Berger* v. *United States* (1935), 295 U.S. 78, 55 S. Ct. 629; *Lewis* v. *State* (1894), 137 Ind. 344, 36 N.E. 1110; *Palmer* v. *State* (1972), 153 Ind. App. 648, 288 N.E.2d 739; *Adler* v. *State* (1961), 242 Ind. 9, 175 N.E.2d 358.

While the prosecutor's utterance in the instant case is a generalized, strong statement of Garrett's guilt denying him the presumption of innocence,[2] rectifying language is included in the statement, *i.e.,* "I would intend, and do in fact intend, *to present the evidence in this case so as to show his guilt."* (Emphasis supplied.)

There is no hint this statement is based on any facts or knowledge other than the evidence in the case. In fact, the inference would seem to be that the Prosecutor somewhat enthusiastically expected to present evidence bearing out his belief of Garrett's guilt.

Furthermore, immediately after voir dire, the court issued preliminary instructions to the jury including a specific instruction as to the presumption of innocence and burden of proof.

The colloquy following the Prosecutor's statement indicates it was made in response to a statement by defense counsel that it was "the Prosecutor's job to presume this man innocent." A statement which is otherwise objectionable may be justified by the fact that it was invited or provoked by counsel for the defendant. 50 A.L.R. 2d 766, at 792. See also: *Henderson* v. *United States, supra; United States* v. *Antonelli Fireworks Co.* (2d Cir. 1946), 155 F.2d 631, *cert. denied,* 329 U.S. 742, 67 S.Ct. 49, *reh. denied,* 329 U.S. 826, 67 S.Ct. 182.

While both statements tended to prejudice the jury, it was within the trial court's discretion to consider the Prosecutor's remarks as retaliatory.

*Robinson* v. *State* (1973), 260 Ind. 517, 297 N.E.2d 409, points to another consideration in deciding the issue of prosecutorial misconduct. Is the conduct repeated so as to indicate a continuing design by the prosecutor to improperly influence the jury? The statement under consideration is the only

2. "A defendant is presumed to be innocent until the contrary is proved." IC 1971, 35-1-36-1, Ind. Ann. Stat. § 9-1806 (Burns 1956 Repl.).

instance of misconduct cited to this court, so it must be treated as an isolated incident. Compare, *DeHority* v. *State* (1939), 215 Ind. 390, 19 N.E.2d 945.

Nor was the statement inflammatory in the sense that it was designed to so arouse the passions of the jury as to place the defendant "in a position of grave peril," as was true in *Robinson* v. *State, supra.*

Finally, misconduct of counsel may be harmless where it has no apparent effect on the outcome of the case. If the evidence is "close", reversible error will more likely be found. *Troyer* v. *State* (1888), 115 Ind. 331, 17 N.E. 569. As shall hereinafter appear, the evidence against Garrett, if believed, cannot be characterized as close.

Considering all these factors: the Prosecutor did not imply personal knowledge to support his statement; the inclusion therein of a reference to presentment of evidence to show guilt; instructions immediately following voir dire as to the presumption of innocence and burden of proof; the fact that the statement was "invited" by defense counsel's argument; the statement, while ill-advised, was not repeated; and that there was substantial evidence of guilt, it is our opinion that the trial court did not abuse its discretion in denying the Motion for Mistrial and request for admonishment. However, in retrospect, an admonishment to the jury would seem desirable.

Statements by counsel during voir dire which prejudice or inflame the passions of the jury, subvert the likelihood of impanelling an impartial jury. Justice Prentice in *Robinson* defined the proper function of voir dire and elaborated on the evils of the "engrained" practice of lawyers trying their cases in voir dire examination, and condemned this practice as being repugnant to the cause of justice—"and should terminate."

Probably as a result of this practice an increasing number of jurisdictions are following the example of the federal courts by limiting the extent of counsel's participation in voir dire.

See Levit et al., *Expediting Voir Dire: An Empirical Study* (1971), 44 S. Cal. L. Rev. 916; Note, *Voir Dire—Prevention of Prejudicial Questioning* (1966), 50 Minn. L. Rev. 1088; *The Jury System in the Federal Courts* (1961), 26 F. R. D. 409.

Be that as it may, on the basis of the record before us, and for the reasons indicated, the failure of the trial court to declare a mistrial or admonish the jury under the circumstances before us, did not constitute reversible error.

ISSUE TWO.

CONCLUSION—It is our opinion that such inconsistencies as may exist in the State's evidence go only to the weight of the evidence, and there was sufficient evidence to support the jury's verdict.

Garrett brings to our attention certain statements which he alleges were inconsistent with other testimony and which so seriously impeach the credibility of the State's witnesses that their testimony could have no probative value.

Certain of these "clouds" in the testimony evaporate on scrutiny of the record. For example, Garrett claims that at one point Flora testified that one Roger Darling was involved in the burglary on November 6, 1970 (the date of the Sauer robbery). However, the record indicates that the questioning had been about a certain burglary in Noblesville and not the Indianapolis burglary.

Garrett also seeks to impeach the testimony of Mrs. Flora, saying:

> "She further testified that when her husband, Charles Flora, and Kenny Taylor came to her house on the night in question that the third man was named Max. She immediately changed her testimony and then substituted the name of the defendant Garrett." (Appellant's Brief, p. 20.)

Again close scrutiny of the record reveals that Garrett misstates the testimony.

Other minor contradictions by Flora did not affect his consistent testimony as to Garrett's participation in the robbery, which testimony was corroborated by Mrs. Flora. The inconsistencies go only to the weight of the evidence and credibility of the witness; we may not reconsider them on appeal. *Baynard* v. *State* (1972), 259 Ind. 336, 286 N.E.2d 844; *Lee* v. *State* (1972), 259 Ind. 301, 286 N.E.2d 840.

While Garrett has been convicted in large part by the testimony of an accomplice (Flora), there is additional testimony by Mrs. Flora that corroborates important segments of her husband's testimony and confirms Garrett's participation in the robbery.

No authority has been cited indicating that minor discrepancies in the testimony of an accomplice unrelated to the facts of the crime in question nullify accomplice testimony—and we find none. In support of this proposition Garrett cites *Croney* v. *State* (1969), 252 Ind. 319, 247 N.E.2d 501, which is distinguishable on its facts and merely states that the testimony of an accomplice requires "utmost scrutiny and evaluation." We further note that the Indiana Supreme Court has held that instructions recommending the utmost scrutiny and evaluation of accomplice testimony are an invasion of the jury's right to determine the credibility of witnesses. *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621; *Cherry* v. *State* (1972), 258 Ind. 298, 280 N.E.2d 818. Since the jury in the instant case received such an instruction, Garrett has received more consideration than he was entitled to under the law.

The judgment of the trial court is affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 300 N.E.2d 696.