CHARLOTTE A. TELFARE *v.* STATE OF INDIANA.

[No. 2-473A104. Filed March 17, 1975. Rehearing denied April 23, 1975.]

**414**

[redacted]

[redacted]

[redacted]

[redacted]

*Jack Quirk*, of Muncie, for appellant.

*Theodore L. Sendak*, Attorney General, *A. Frank Gleaves, III*, Deputy Attorney General, for appellee.

WHITE, J.—Appellant was charged in two separate affidavits with the sale of marijuana in violation of the Uniform Dangerous Drug Act[1] and with the sale of cocaine in violation of the Uniform Narcotics Act.[2] The two charges were consolidated for trial by jury. Appellant was convicted on both counts and received indeterminate sentences of one (1) to ten (10) years and five (5) to twenty (20) years respectively.

From those convictions appellant appeals citing as errors first, the sufficiency of the evidence; second, the introduction of two exhibits; third, certain statements made by the trial court in the presence of the jury; and fourth, certain statements made by the prosecutor during his final summation.

We affirm.

## I.

This court, of course, will not weigh the evidence but will only look to the evidence most favorable to the State and the reasonable inferences therefrom. *Buise* v. *State* (1972), 258 Ind. 321, 327, 281 N.E.2d 93, 97.

That evidence shows that on the night of September 19, 1972, an undercover state policeman (Hampshire) was introduced to appellant by a third person (Taflinger, a known drug abuser, who was unaware of Hampshire's occupation), that Hampshire and Taflinger jointly purchased a capsule of cocaine from appellant, that Hampshire and appellant had

---

1. IC 1971, 16-6-8-1 *et seq.*, Ind. Ann. Stat. § 35-3331 (Burns 1956 Repl., 1972 Supp.) *et seq.*

2. IC 1971, 35-24-1-1 *et seq.*; Ind. Ann. Stat. § 10-3519 (Burns 1956 Repl., 1972 Supp.) *et seq.*

an extended conversation on the possibility of appellant introducing Hampshire (whom appellant believed represented an organization that wanted to assume control of drug distribution in the area) to narcotics dealers in the area, and that later appellant sold Hampshire an ounce of marijuana. Subsequent testing of the materials showed them to be cocaine and marijuana respectively.

Appellant's own testimony basically substantiated the events of that night, the major differences being that she sold the capsule to Taflinger rather than Hampshire (as a favor to a friend instead of as a dealer), and that she sold the marijuana to Hampshire only because he insisted.

Appellant's argument that the evidence is insufficient to sustain her conviction attempts to make only one substantial point, the point that her defense of entrapment should have succeeded because the State failed to introduce evidence that she had ever sold drugs before Hampshire, the undercover agent, approached her. That is true, but it does not follow that as a matter of law, the jury was required to find that she was entrapped by Hampshire. There is little or no evidence that the idea of making the first sale was generated in her mind by him. On the contrary her witness Taflinger testified unambiguously that the sale of the cocaine capsule was the result of a previous arrangement between her and appellant, that no one had asked her to make a purchase from appellant, and that the purchase was her own idea and for her personal benefit. It was only after they had met with appellant and the capsule was produced that Hampshire offered to and, over Taflinger's mild objection, was permitted to buy half the capsule. Appellant herself testified that she had obtained the capsule for Taflinger, that she refused to sell any part of it to Hampshire because she didn't know him, that Hampshire gave Taflinger the money for his half and that Taflinger then purchased the capsule from appellant.

Clearly there can be no entrapment involved in this transaction. Appellant's evidence fails to show that the unlawful

sale was originated by a law enforcement officer who planted the criminal idea in her theretofore pristine mind.[3] In fact, that evidence even fails to show that the law enforcement officer was aware in advance that the sale was going to occur.

The thrust of appellant's evidence at trial appears to be that the cocaine sale was not a commercial transaction for profit but merely a friendly gesture between users. This contention, even if it be true, cannot assist appellant since the Uniform Narcotics Act does not distinguish between "commercial" and "friendly" sales.

As to the second transaction, the sale of marijuana, both sides agree that it was Hampshire who first suggested the sale.

If an illegal act is initiated by a police officer for the purpose of trapping a suspect it is entrapment unless the police officer has probable cause to believe the suspect has been involved in illegal activity. *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803; *Thompson* v. *State* (1972), 259 Ind. 587, 290 N.E.2d 724 (dissenting opinion). At the time Hampshire met appellant on September 19th he did not have probable cause to believe that she was involved in the illegal sale of drugs.

However, it is not required that all the information necessary to establish probable cause be known prior to the time an investigation is commenced. "It is sufficient if during the investigation but before the transaction which is alleged to be entrapment the officers acquire the information which supplies probable cause." *Walker* v. *State* (1970), 255 Ind. 65, 71, 262 N.E.2d 641, 645.

In the case at bar the police officer had witnessed, if not partaken in, an illegal sale of drugs made by appellant to a third person. A firmer basis for the existence of probable cause would be difficult to imagine.

Appellant's entrapment arguments are without merit.

---

3. See *Gray* v. *State* (1967), 249 Ind. 629, 231 N.E.2d 793; *Thompson* v. *State* (1972), 259 Ind. 587, 290 N.E.2d 724; *Fischer* v. *State* (1974), 160 Ind. App. 641, 312 N.E.2d 904; *Hauk* v. *State* (1974), 160 Ind. App. 390, 312 N.E.2d 92.

## II.

Appellant assigns as separate errors the introduction of Exhibits 1 and 2, the capsule and powder and the marijuana, arguing that the "chain of custody" was not sufficiently proven to connect appellant with those exhibits. The exhibits in question were delivered by Hampshire to a State Police Chemist on October 2, 1972, and kept in a property room from then to the date of trial. Appellant attacks the security of the property room since eight persons (two chemists and six lab technicians) had access to the room itself and the exhibits (and other evidence to be used in other cases) were kept on unlocked shelves. Thus the contents of the exhibits could have been changed without the chemist's knowledge.

Appellant cites and quotes from *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, concerning the need for establishing a chain of custody for narcotics. That case, however, involved a situation wherein a gum wrapper full of a suspected powder had been deposited in the evidence room and then, according to the property room records, it was taken out by one police officer and returned a week later by a different police officer, all before the powder was analyzed. Neither officer testified and no evidence concerning the whereabouts of the powder during that week was presented. The Supreme Court properly concluded that it was error to permit testimony concerning the nature of the powder and to permit the powder to be introduced into evidence.

More analogous to the instant case is *Jones* v. *State* (1973), 260 Ind. 463, 296 N.E.2d 407, which distinguished between the *Graham* situation and a situation wherein the suspected substance was for a ten (10) day period kept in a police laboratory that might not have been locked. *Jones* held that the mere possibility that the evidence might have been tampered with did not make the evidence totally objectionable. In fact, the instant case would even satisfy the objections raised by the dissenting opinion in *Jones* in that the security procedures followed in the property

room were sufficiently described to permit evaluation of the possibility of tampering.

Appellant also argues that inasmuch as the witness identifying Exhibit 2 to be marijuana was not a chemist he could not qualify as an expert witness. Appellant has not cited any authority showing that a person with that witness's training and experience cannot be permitted to testify as an expert witness. The question of whether a witness is qualified to testify as an expert is within the discretion of the trial court and that court's ruling will not be changed absent a manifest abuse of that discretion. *Pettit* v. *State* (1972), 258 Ind. 409, 281 N.E.2d 807. Appellant has shown no such abuse.[4]

### III.

Appellant argues that during the dismissal of the jurors at the end of the first day of trial the trial judge committed error by making improper remarks to defense counsel while the jurors were still present, as shown by the following dialogue:

> "JUDGE RECTOR: All right, we'll adjourn until nine o'clock. I'll overrule the objection for the record. Ladies and gentlemen of the jury be here tomorrow morning at nine o'clock ready for the trial and Counsel if you have any—just a minute Mr. Quirk, sit down, please.

> "MR. QUIRK: I'm sorry Your Honor, I was just—

> "JUDGE RECTOR: You're in Court and you are not going to make a show here now just sit down.

> "MR. QUIRK: I didn't mean to do that your Honor. I'm sorry, I was just getting ready."

The following day, outside the presence of the jury, defense counsel moved for a mistrial, which motion was denied.

---

4. See *Pryor* v. *State* (1973), 260 Ind. 408, 296 N.E.2d 125, wherein a conviction of possession of marijuana was affirmed. There the substance was neither introduced into evidence nor subjected to chemical analysis, having been smoked by appellant. The "expert" witness was a person who testified that appellant had smoked a substance that witness, because of his history of trafficking in and using marijuana, knew was marijuana.

Appellant's brief does not set out the circumstances surrounding the above dialogue, but the record is somewhat more revealing.

The objection referred to in said dialogue is an objection by appellant to the prosecution's request for a recess until the following morning (it then being 3:00 P.M.), at which time the prosecution's last witness, Hampshire (who was then testifying in Michigan City), would be available. Inasmuch as without Hampshire's testimony the State's case would not withstand a Motion for Judgment on the Evidence, a certain amount of perturbation on defense counsel's part is understandable.

The reaction of defense counsel to the granting of a recess is described by the trial judge in his immediately response to defense counsel's motion for mistrial.

> "You mean to tell the Court, this Court cannot admonish some lawyer gets up and insults the Court by parading around, while the jury was still here, slams his papers down in front of the jury, shows disrespect to the jury, you mean the Court is not supposed to say anything?"

The conduct of the trial is within the discretion of the trial judge, *Bassemier* v. *Sartore* (1964), 137 Ind. App. 139, 201 N.E.2d 285, and in this case we cannot hold that the trial court's mild rebuke to defense counsel's expression of his frustration was an abuse of that discretion.

## IV.

Appellant's final argument is that the prosecuting attorney, during his rebuttal to defense counsel's final summation, stated:

> "When I took the oath of Prosecuting Attorney of this Court, I swore I would uphold the Constitution of the United States and the State of Indiana and prosecute those who commit crimes, but I feel that my job is also to protect the innocent (inaudible), and I stand before you today with a clear conscience."

Defense counsel objected, saying: "Now, your Honor, I would move for a mistrial because the Prosecuting Attorney

is putting his credibility before the jury, and it is highly improper", to which the Judge replied "This is strictly argument, Mr. Quirk, and I think the Prosecuting Attorney has a perfect right to talk that way."

It should be noted that due to the inadequacy of the recording equipment used in the trial court most of the prosecuting attorney's original summation, the defense attorney's entire final summation, and all of the prosecutor's rebuttal except the above statement is inaudible and not subject to transcription. Thus this court has no context within which to evaluate that statement. We are not able, as was the United States Court of Appeals for the Seventh Circuit in *United States* v. *Battiato* (1953), 204 F.2d 717, 719, to say that "we can find in the record no statement of the . . . [prosecuting] attorney from which the jury could possibly infer that the prosecutor had personal knowledge or was attempting to lead them to believe that he had such knowledge of any material fact." Conversely, however, the statement hereinabove quoted, standing alone, is, as *Battiato* said to a similar remark, "far short of alleging that the speaker had personal knowledge of facts showing defendant's guilt." See *Garrett* v. *State* (1973), 157 Ind. App. 426, 300 N.E.2d 696, 38 Ind. Dec. 321.

But we have no need to speculate on whether the jury could possibly have inferred from the prosecutor's remark, in the unrecorded context in which it was heard, that he had personal knowledge or was attempting to lead the jury to believe that he had personal knowledge of any material fact not in evidence which convinced him of defendant's guilt. As we said in *Garrett, supra,* in considering an allegedly improper statement made by the prosecuting attorney during *voir dire* examination of prospective jurors:

"Finally, misconduct of counsel may be harmless where it has no apparent effect on the outcome of the case. If

the evidence is 'close', reversible error will more likely be found. *Troyer* v. *State* (1888), 115 Ind. 331, 17 N.E. 569. As shall hereinafter appear, the evidence against Garrett, if believed, cannot be characterized as close." (300 N.E.2d at 702.)

The evidence against appellant (as noted under part I hereof), if believed, cannot be characterized as close. Thus, assuming *arguendo* that the statement objected to did in fact constitute misconduct on the part of the prosecuting attorney, such misconduct was harmless.

This Court's present holding that the statement made by the Prosecuting Attorney does not constitute reversible error is not to be construed as approval of that statement. This Court cannot approve of, nor should any court approve of, a statement that is so patently in violation of the Code of Professional Responsibility adopted by the Supreme Court of this State.[5] Nor is this Court's present holding to be construed as condoning, if not actually exhorting, the making of such statements by a Prosecuting Attorney in those cases where the evidence, if believed, is, at least in his opinion, not close. A Prosecuting Attorney who might make such statements in argument would not only incur the risk of having to retry his case should the trial court or a reviewing court disagree with his opinion of the evidence, he would also be violating the aforementioned Code of Professional Responsibility.

The judgment is affirmed.

Sullivan, P.J., concurs; Buchanan, J., concurs in result only.

---

5. As we said in *Garrett, supra* (300 N.E.2d at 700):
"The Code of Professional Responsibility adopted by our Supreme Court incorporated this idea:
" ' . . . .
'(C) in appearing in his professional capacity before a tribunal, a lawyer shall not:

. . . .
(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.
(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on this analysis of the evidence, for any position or conclusion with respect to the matters stated herein.' DR 7-106."