### WARNKE v. STATE OF INDIANA.

[No. 13,787. Filed June 26, 1929. Rehearing denied September 14, 1929.]

*Jenkines & Jenkines,* for appellant.

*James M. Ogden,* Attorney-General, and *Merl M. Wall,* Deputy Attorney-General, for the State.

LOCKYEAR, J.—On June 4, 1926, an affidavit was filed against Frank Tam in the Cass Circuit Court, wherein he was charged with the larceny of nine chickens of the value of $10, and in another affidavit the appellant was charged as being an accessory before the fact in the commission of said crime.

The appellant was tried before a jury and found guilty as charged, and sentenced to imprisonment in the jail of Cass county for sixty days and fined the sum of $100.

The appellant contends that to constitute larceny the first essential is that the thing which is the subject of the crime should be taken from the possession of the owner into the possession of the thief and be carried away by him, for, until this is done, no larceny, however definite may be the intent of the prospective thief to commit the theft, has been committed, citing 36 C. J. p. 747, §40; *United States* v. *Cohen* (1921), 274 Fed. 596; *Barnhart* v. *State* (1900), 154 Ind. 177, 56 N. E. 212.

As set out in appellant's brief, one witness, Charles B. Elliott, testified: That he was the owner of the chickens that were stolen; that, about midnight of June 24, 1926, he heard a noise in the chicken house and went out with a rifle, and saw a man in the chicken house with a flashlight in one hand and a chicken in the other hand and was putting the chicken in a sack, and that he shot at this man, who then escaped from the hen house; that he found nine of his chickens in the sack which was lying on the floor of the hen house. The sheriff was called, but before he got there, witness and his wife noticed a Ford automobile go by their home several times, with a

peculiar clicking noise in the motor, and with the lights being turned bright and dim alternately. After the sheriff arrived, a search was made and the nine chickens were found, and also a flashlight lying on the ground outside the chicken house where the man jumped out of the window. Later the sheriff and witness found Frank Tam, the man who had been in the chicken house, sitting on the ground on witness's farm about fifteen or twenty rods from the chicken house. This man was shot through the shoulder and was getting weak. While the sheriff was searching around there, and before Frank Tam was discovered, witness noticed this same Ford car coming by his home with the clicking motor and intermittently dimmed lights, and told the sheriff, who backed his car across the road and stopped the car, which was a Ford car, and in which was found the appellant Carl Warnke and William McDonald. That the sheriff talked with Warnke awhile and then let him go, and that a short time afterwards Frank Tam was discovered there. That while the sheriff was talking to Warnke, the latter was very nervous.

It is also set out in appellant's brief that Frank Tam testified that: He worked for Hyman and Browning on Brown street on the 23rd or 24th day of June, 1926, and that he quit work about half past five in the evening and went to Warnke's place of business and went down the river fishing with Carl Warnke and Russell Dunbar. That he drank liquor on this trip furnished by Warnke, and that they returned and witness got out of the car at Warnke's soft drink parlor, went home and got his supper, and came back to Warnke's place about 9 p. m. or a little after. That he played "rhum" there and had several drinks of "mule" liquor, and that, later in the evening, Warnke suggested that they go out and get some chickens and asked witness to go, and he agreed. Warnke said he would furnish the machine and asked

McDonald to go along. Warnke also said he had the sacks and flashlight; that Warnke got the flashlight, but it wouldn't work and he sent McDonald out with it to get it repaired. Then Warnke went to the back end of the room and got some sacks and put them in his machine. That Warnke first mentioned to witness about getting chickens, and that, after McDonald returned with the flashlight, they all three got in Warnke's car, a Ford touring car, and that Warnke drove on North Street to a filling station or garage and bought some gas, and then they drove out north on the Pleasant Grove Pike out beyond the dance pavilion; that they drove on to Elliott's home, and Warnke stopped the car and handed the sack and flashlight to witness and said he (Warnke) would go on up the road, and "for me to go in there, and, after I got the chickens, he would flash the lights of the car on and off coming down the road and I was to flash the flashlight and he would pick me up." And that Warnke further said to witness at that time, "There is a good place, there is no lights." That, on the way out to the Elliott farm, Warnke also said to witness that they would take the chickens to Warnke's home. That the witness took the sack and flashlight and went into Elliott's hencoop and started to get some chickens, but did not remember how many he had gotten in the sack before he was shot. That, after he was shot, he went through the window and dropped the flashlight outside somewhere and that he went through an orchard and laid in a field; that he saw the lights of the car coming, being turned off and on, but that he could not go out to them.

When the man, Frank Tam, reached up and plucked the chickens from the roost and put them in the sack, the crime of larceny was complete. The fact that he was shot before he got off the premises neither adds to nor takes from the essential ele-

ments of the crime. There was more than an intent to steal.

The appellant in his appeal to this court relies upon the alleged error in the court's action in overruling the appellant's motion for a new trial, wherein it is shown that a number of witnesses for the appellant were asked the question, "Are you acquainted with the general reputation of the appellant for honesty and fair dealing in the neighborhood in which he lives?" and, after answering that they were, they gave the answer that his reputation was good.

The appellee introduced witnesses, who were asked the question, "Are you acquainted with the general reputation of the defendant, Carl Warnke, in the community in which he resided on or about the 14th of June, 1926, as to being a law abiding citizen?" Objection was made to the question, which objection was overruled by the court, to which ruling of the court, defendant excepted, and witnesses answered the question that they were so acquainted and that his reputation was bad.

The defendant in this case testified in his own behalf, and by so testifying made himself subject to §2272 Burns 1926, which says: "In all questions affecting the credibility of a witness, his general moral character may be given in evidence."

The appellant contends that it was the right of the State to prove that the general reputation of the appellant for truth and veracity was bad, that his general reputation for morality was bad, and, having on his own behalf produced witnesses who testified that his reputation for honesty and fair dealing was good, the State could show that his reputation for honesty and fair dealing was bad. The following authorities are cited in support of appellant's contention: Underhill, Criminal Evidence (3rd ed.) p. 137; *State* v. *Bloom* (1879), 68 Ind. 54, 34 Am. Rep. 247; *People* v. *Fair* (1872), 43 Cal. 137,

148; *Kahlenbeck* v. *State* (1889), 119 Ind. 118, 21 N. E. 460; *In re Darrow* (1910), 175 Ind. 44, 92 N. E. 369.

The appellant on cross-examination was asked concerning other crimes of which he had been convicted. He testified he had been arrested and plead guilty to violating the liquor law and served a penal farm sentence; that he had been arrested, tried and found guilty of assault and battery upon his wife. Having testified that he had been found guilty on two previous occasions of violating the laws of the state, we are of the opinion that, under the circumstances, he was not harmed by the question concerning his reputation as a law-abiding citizen, and further, we have examined the record carefully and are of the opinion that the defendant was proved guilty beyond a reasonable doubt, and in this case the fact that the court permitted the witness to answer concerning his reputation as a law-abiding citizen did not affect the verdict, for the evidence of his guilt was clearly established, and, therefore, the error complained of is not sufficient to justify a reversal of this case. See §2394 Burns 1926; *Agar* v. *State* (1911), 176 Ind. 234, 94 N. E. 819; *Leach* v. *State* (1912), 177 Ind. 234, 97 N. E. 792; *Smith* v. *State* (1917), 186 Ind. 252, 115 N. E. 943.

Judgment affirmed.