NEAL ET AL. *v.* STATE OF INDIANA.

[No. 26,926. Filed April 27, 1938. Rehearing denied July 6, 1938.]

*Claude R. Henry, Gretchen H. Cole, Warren W. Brown,* and *Emerson J. Brunner,* for appellants.

*Omer S. Jackson,* Attorney-General, *James K. Northam,* Deputy Attorney-General, and of counsel, *Fred V. Kramer,* Prosecuting Attorney, and *George R. Tolen,* for the State.

SHAKE, J.—The appellants Vurtis Neal and Hugh Marshall were jointly indicted for the murder of William

Bright by the grand jury of Shelby County. The first count of the charge was for murder in the first degree and the second for murder in the perpetration of a robbery. This appeal is prosecuted from a judgment of conviction on the second count. Fifty-three separate errors are assigned, all of which will be fully considered on account of the gravity of the punishment inflicted upon appellants.

Appellant Neal filed a separate motion to quash each count of the indictment, which was overruled. In support of the proposition that this constituted reversible error, it is pointed out that the back of the indictment was indorsed, "A True Bill," and signed, "Lawrence Coers, Foreman," but that between the indorsement and the signature of the foreman were the names of twelve witnesses for the state. It is claimed that this was not a compliance with the statute and the indictment was therefore bad, and should have been quashed. Section 9-901 Burns' Ann. St. 1933 (§2123 Baldwin's 1934), provides that a grand jury indictment must "be indorsed by the foreman of the grand jury, 'A true bill,' and he must *subscribe* his name thereon as foreman." (Our italics.) *Denton* v. *State* (1900), 155 Ind. 307, 58 N. E. 74, is authority for the statement that an indictment is clearly bad which is not "indorsed as a true bill *over* the signature of the foreman of the grand jury who returned it into court." (Our italics.) Applying the Denton case to the statute we can not say that the indictment was not indorsed as a true bill or that the signature of the foreman was not properly subscribed thereto. We do not consider the listing of the names of the state's witnesses between the indorsement and the signature as a circumstance invalidating the charge. *State* v. *Bowman* (1885), 103 Ind. 69, 2 N. E. 289.

At the end of the last page of the indictment appeared the following: "Recorded this 25th day of January, 1937.

Russell M. Cherry, Clerk," and it was indorsed on the back, "Filed, Jan. 25, 1937. Nellie P. Hale, Clerk, Shelby Circuit Court." From appellants' brief we may assume that Russell M. Cherry was clerk of the grand jury that returned the indictment. Section 9-904 Burns' Ann. St. 1933 (§2126 Baldwin's 1934), requires that the clerk of the court shall file and record all indictments and indorse thereon the date of such filing. Section 9-810 Burns 1933 (§2106 Baldwin's 1934), provides that "the grand jury must select one of its number as clerk," etc., but there is no provision for filing the indictment with the clerk of the grand jury or that he shall indorse or sign it. The purported indorsement and signature of the clerk of the grand jury on the indictment may be regarded as surplusage, in no wise harmful or prejudicial to appellants. It afforded no ground for quashing the charge.

The appellant Marshall claims reversible error because the trial court denied his motion for a separate trial. The record discloses that before pleading to the charge Marshall presented a verified motion to the court alleging, in substance, that he had a separate and distinct meritorious defense to the alleged crime and that he felt that the jury could not justly weigh his defense with the evidence of his co-defendant. He further stated therein that he was "contemplating a special plea." The motion did not disclose the nature of the special plea contemplated, nor did it contain any facts from which the trial court might have determined whether the petitioner's rights would be adversely affected by a joint trial beyond the assertions contained in the motion. No answer or counter-affidavits were filed by the state, and the court denied Marshall's request for a separate trial.

Formerly, persons jointly charged with a felony were entitled to a separate trial, upon demand (§9-1804 Burns

1933, §2284 Baldwin's 1934), but this practice was changed by the Acts of 1935, Ch. 92, §1, p. 286, §9-1804 Burns 1933, (Pocket Supp.), §2284 Baldwin's 1935 Supp., which provides: "When two (2) or more defendants are jointly charged with any offense, whether a felony or a misdemeanor, they shall be tried jointly, unless the court, in its discretion, on the motion of the prosecuting attorney, or of any defendant, or on its own motion, orders separate trials." There was consequently no error in the denial of Marshall's demand for a separate trial, unless it may be said that the trial court abused its discretion.

Judicial discretion is the option which the judge may exercise between the doing and the not doing of a thing, the doing of which can not be demanded as an absolute right of the party asking it to be done. *McFarlan* v. *Fowler Bank City Trust Co.* (1938), ante 10, 12 N. E. (2d) 752. Discretion does not mean absolute or arbitrary power. It must be exercised in a reasonable manner, and not maliciously, wantonly, or arbitrarily to the wrong and injury of another. This is the rule applicable to courts while acting within their jurisdiction and the legal scope of their powers as fixed by law. *Taylor* v. *Robertson* (1896), 16 Utah 300, 52 Pac. 1. Where a discretionary power is vested in a lower or inferior court, there must be a plain abuse of such power to the prejudice of the complaining party, in order to warrant the interference of this court on appeal. *Detro* v. *State* (1853), 4 Ind. 200; *Mead* v. *Burk* (1901), 156 Ind. 577, 60 N. E. 338.

In the absence of some showing of fact as a basis for the conclusion that Marshall's defense would be prejudiced by a joint trial, this court can not say that the denial of his motion for a separate hearing was an abuse of discretion. The mere fact that the matter was heard on a verified motion, and that no counter-affidavits were

presented and no evidence heard, does not present such a situation as we can say that its denial was error. We must, in such a case, look to the facts brought to the notice of the court, undenied as they were, and from them determine whether they made out a plain abuse of the power conferred on the court by the express terms of the statute. It may be assumed that the special plea which Marshall contemplated had reference to the plea of insanity, which was entered immediately after a separate trial was denied. The record discloses that a like motion for a separate trial and a like plea of insanity were thereafter entered by Neal. This court can not say, as a matter of law, that when two or more persons are jointly charged with crime, the fact that one or more of them contemplates, or does in fact enter, special pleas of insanity, will entitle either of them to a separate trial, in the absence of a showing of other facts disclosing that such denial amounted to an abuse of discretion on the part of the trial court. There was no error in denying appellants' motions for separate trials.

The appellant Neal filed his separate motion for a change of venue from the regular judge of the Shelby Circuit Court, which motion was sustained and a change of venue granted. Marshall objected to the filing of the motion and excepted to the granting of the same. The regular judge submitted the names of three prospective special judges. The state and Neal each struck off the name of one of the nominees and the court designated the appointment of the nominee whose name remained, but he declined to serve. The court thereupon submitted a second list of three names. Two of the names on the second list were on the previous list. This was proper. *Shockley* v. *State* (1924), 194 Ind. 321, 142 N. E. 850. The state and Neal had each previously stricken one of the names re-submitted. The state again struck, but Neal refused to do so, whereupon the court

directed the clerk of the court to strike for Neal. This was done and the Honorable Roscoe C. O'Byrne was appointed, and accepted. His name did not appear on the first list. Thereafter both Neal and Marshall filed separate and joint objections to the jurisdiction of Judge O'Byrne to serve. The objections set forth in detail the facts above recited, and charged that the appointment of the special judge was not in conformity with the practice or the statute, and that he was without jurisdiction. To keep his objections good, Neal declined to participate in the selection of the jury, assigning as his reason therefor that the court and the presiding judge had no jurisdiction over his person. Proper exceptions were reserved to all of the rulings relating to objections to the method of appointing the special judge and to his jurisdiction.

Neal's motion and affidavit for a change of venue from the judge was filed with and presented to the court on March 13, 1937. This date is important because Chapter 290, Acts of 1937, carrying an emergency clause, became effective at 4:45 P. M. on March 12, 1937. This act expressly repealed §9-1302 Burns 1933, §2223 Baldwin's 1934, which, prior thereto, had covered the subject of changes of venue from the judge in criminal cases. The act of 1937, referred to above, made no provision for the method of selecting special judges.

The General Assembly of 1937 passed another act relating to changes of venue from judges, applicable to civil and criminal cases alike. Acts of 1937, Ch. 85, §2-1430 Burns 1933 (Pocket Supp.), §2223-1 Baldwin's 1937 Supp. It provides, among other things, that a party asking for a change from the judge may include in the application an objection to the presiding judge selecting the special judge or submitting names from whom the special judge shall be selected, in which event the clerk of the Supreme Court shall, subject to the direction of this court, submit names from whom the special judge

shall be selected, in the manner therein provided. This act concludes: "Nothing contained in this section shall operate to change the present procedure in the selection of judges upon change of venue taken from the judge, excepting where an objection is incorporated in the affidavit for change of venue from the judge as above provided." Appellant Neal made no objection in his affidavit to the presiding judge selecting a special judge or submitting names, so the provisions of Chapter 85 of the Acts of 1937 were not invoked, and we are not here concerned with them.

In considering the situation created by the enactment of Chapter 290, Acts of 1937, and the resulting repeal of §9-1302 Burns 1933, §2223 Baldwin's 1934, this court held, in the case of *State* v. *Baker* (1937), 212 Ind. 44, 7 N. E. (2d) 984, that since there is now no method provided by statute for selecting special judges in criminal cases (when no objection is made in the application to the presiding judge making the appointment or nominating names), the provisions of the civil code apply. The appellants and the Attorney General agree that the civil code is controlling in the instant case. The section of the statute applicable is as follows: "Hereafter, whenever a change of venue is taken from the judge in any civil action pending in any circuit or superior court in this state, or in any case where the presiding judge is disqualified from any cause to try such cause, if the parties in such action shall agree, in open court, upon some judge or member of the bar of any court in this state to try such cause, it shall be the duty of the court to appoint such judge or attorney, so agreed upon, to try such cause. In the absence of such agreement, it shall be the duty of the court, within three (3) days, to nominate three (3) competent and disinterested persons, each of whom shall be an available judge or member of the bar of this state, to be submitted to the par-

ties in the action, from which the plaintiff side and the defendant side, within two (2) days thereafter, may strike off one (1) of such names, each. The court shall thereupon appoint the person, or one (1) of the persons, who shall remain unchallenged, to preside as judge in said cause." Section 2-1409 Burns 1933, §207 Baldwin's 1934.

Appellants contend that there was reversible error in the manner of selecting the special judge because: (1) The court submitted names before the parties failed to agree on a special judge; (2) the court permitted the state to strike from the lists submitted before appellants were permitted to strike; (3) the court, in submitting the second list, included the names of two persons who had been stricken from the first list; (4) the court permitted the clerk to strike from the second list, upon the failure and refusal of Neal to strike; (5) that neither the Honorable John H. Morris nor the Honorable Roscoe C. O'Byrne, whose names appeared on the lists submitted by the presiding judge, were members of the Shelby County, Indiana, bar, or available judges of circuit courts adjoining said Shelby County.

The record before us does not disclose that the parties ever agreed upon the appointment of a special judge. Granting that it is mandatory that an agreement on a special judge duly made in open court shall be respected, we can not presuppose such an agreement in the absence of an affirmative showing. The statute is silent as to within what limitations of time an agreement may be reached, and we are unauthorized to read into its terms any conditions which would require the trial judge to delay the appointment in the hope or expectation that the parties might ultimately arrive at an agreement. If the parties desire to avail themselves of the privilege of agreeing upon a special judge to try their case they must act promptly and positively. If they wish

this court to review an alleged denial of this right they must bring us a record clearly showing that they did have such an agreement; that the presiding judge was fully advised of such fact in open court, and that a proper and specific exception was saved at the time.

It is next asserted that the presiding judge erred in permitting the state to strike first from the lists of prospective special judges submitted by him. The proper procedure in this regard is not clearly disclosed by the statute. It simply provides that "the plaintiff side and the defendant side . . . may strike off one (1) of such names, each." Section 2-1409 Burns 1933, §207 Baldwin's 1934. Nothing is said about the order of striking. It would, of course, be error to deny a party the right to strike from the names submitted. *Stephen* v. *State* (1934), 207 Ind. 388, 193 N. E. 375. But we do not find that this court has ever considered the order of striking, although it was said in *Stilz* v. *Ketelsen* (1920), 75 Ind. App. 166, 167, 129 N. E. 31: "The appellants having filed the affidavit for a change of judge, the court committed no error in directing that appellants should be the first to strike a name from the list presented from which to select a special judge." From the records which have come before us on appeals from the various courts of the state, we believe this is the usual practice, and we commend it for the sake of uniformity. We can not judicially say, however, that the opposite practice, namely, to require or permit the state to strike first in criminal cases would constitute reversible error. Indeed, we can see how the latter practice might be said to be to the advantage of the defendant. If the state strikes first, the defendant has an undeniable and final choice between two persons who shall preside at his trial. Prior to 1905 the presiding judge, alone, selected the special judge to try a criminal case. There

is no claim here that the presiding judge acted corruptly or arbitrarily, and we do not think the fact that the state struck first prejudiced appellants' rights to a fair trial by an impartial tribunal.

On the second list of prospective special judges submitted to the parties appeared the names of two persons that had been stricken from the prior list. We find nothing in the statute or the decisions that condemns this practice. Appellants have cited the case of *State ex rel. Kealing* v. *Clay Circuit Court* (1934), 207 Ind. 259, 192 N. E. 423, but we do not consider it applicable. That case holds that where a change of venue is granted from a county to which it had previously been venued on application of the opposing party, the court should exclude from the list of counties submitted on the second application the name of the county from which the first change was taken. It was the reasoning of this court that if the cause should be returned to a court that had been previously deprived of its jurisdiction by the action of one of the parties, the act of that party in taking a change of venue would thereby be rendered futile and useless. In the case of a change of venue from the judge an analogous situation could only arise if the presiding judge on a second application should submit to the parties the name of the original trial judge, from whom a change of venue had already been taken. That is not the situation here. Neither of the nominees whose names appeared on the first and second lists had been appointed special judge in this cause. It may also be observed that the state, as well as the appellant Neal, had stricken one of these names. The provisions of §2-1430 Burns 1933, §2223-1 Baldwin's 1937 Supp., Acts of 1937, Ch. 85, relating to certification to the clerk of the Supreme Court upon failure of a special judge to qualify, can have no application here, for the reason that no objection to the presiding judge submitting names

was contained in Neal's application for a change of venue. Under the circumstances shown, no error was committed in respect to this proposition.

The following excerpt from the record discloses what occurred after the second list was submitted:

> "And the defendant, Vurtis Neal, now refuses to strike off on the list of Special Judges herein.

"And the Prosecuting Attorney now strikes off and the Clerk of this Court, for the defendant, Vurtis Neal, now strikes off and the Hon. Roscoe C. O'Byrne remaining not stricken off, the Court appoints the Hon. Roscoe C. O'Byrne . . . And the defendant, Vurtis Neal, now objects and excepts to the appointment of the Hon. Roscoe O'Byrne, Special Judge."

There was no withdrawal of Neal's refusal to strike and no request for more time to exercise that privilege. One can not invoke the action of a court in a matter of this kind and then paralyze its functioning by refusing to move. There was nothing improper in permitting the clerk to strike for Neal, under the situation disclosed by the record quoted above.

There is no merit in the objection that two of the persons whose names appeared on the lists submitted were neither members of the Shelby County, Indiana, bar, or available judges of circuits adjoining said Shelby County. The statute prescribes that special judges shall be "competent and disinterested persons, each of whom shall be an available judge or member of the bar of this state." Section 2-1409 Burns 1933, §207 Baldwin's 1934. No showing is made that any of the nominees did not possess the statutory qualifications.

There was a motion for a directed verdict for the appellants at the close of the state's case, and it is asserted

that, under the evidence, this ought to have been sustained. In support of this proposition it is urged that to sustain the second count of the indictment (murder in the perpetration of a robbery) it was incumbent on the state to establish that appellants were actually committing the robbery when the unlawful killing occurred. It is further claimed that the undisputed evidence shows that the crime of robbery was consummated in the city of Indianapolis, and the killing occurred in Shelby County several hours later. In support of their theory, appellants rely upon the rule laid down in 54 Corpus Juris, p. 1011, as follows: "To constitute robbery there must be an asportation. In other words, it must appear that the property was taken from the possession of the victim into that of the robber. But the crime is consummated if the robber acquires possession of the property for even a short time, and his subsequent disposition of the property taken is immaterial." This rule is well recognized in Indiana. See *Chizum* v. *State* (1932), 203 Ind. 450, 180 N. E. 674; *Warnke* v. *State* (1929), 89 Ind. App. 683, 167 N. E. 138.

The undisputed facts are, that the appellants accosted Bright on Washington Street, in Indianapolis, when he stopped his car at a signal light early in the evening of the day the killing occurred. After threatening the decedent with a pistol he was ordered to drive his car a short distance and stop. Neal then took the wheel of the automobile, while Bright was placed in the rear seat with Marshall. A stop was made at a filling station, where gasoline was obtained. The appellants proceeded with the decedent and his automobile across the Marion County line into Shelby County. The car was parked at the edge of a cornfield and Bright was ordered to alight. He was then searched and deprived of a small sum of money.

While Marshall was obtaining a rope from the car, Neal shot Bright four times, causing his instant death. Appellants placed the body in the car and drove a short distance to a bridge, where they threw the body into the river. They then proceeded to Madison, Indiana, with the stolen car. In *Bissot* v. *State* (1876), 53 Ind. 408, two defendants were convicted of murder while in the commission of a robbery. On appeal to this court they made the claim that, at the most, they were guilty of no higher degree of homicide than manslaughter, because the robbery was consummated before the killing. In denying the contention this court said (p. 413): "In our opinion, where the homicide is committed within the *res gestae* of the felony charged, it is committed in the perpetration of, or attempt to perpetrate, the felony, within the meaning of the statute."

The robbery and murder of Bright was a single uninterrupted transaction. Appellants did not depart from the felonious undertaking from the time they stopped Bright in Indianapolis until they killed him in Shelby County. The crime was continuous in its purposes and objectives. Conceding that the robbery was completed, so far as the automobile was concerned, when Bright was deprived of its possession in Indianapolis, his removal to the place of his death can not be differentiated as a separate or distinct transaction. The taking of his money from the pockets of the victim, the disposal of his body, and the transportation of the car from the scene of the crime to Madison, were all parts of the same unlawful enterprise.

The case of *State* v. *Daniels* (1922), 119 Wash. 557, 205 Pac. 1054, illustrates the application of the true rule. In that case the defendants stole an automobile on the streets of the city of Seattle. They drove it away some six miles to a hotel, where they spent the night. On the

next morning, while driving the automobile, they were stopped by police. During the altercation that followed, one of the officers was killed. Sustaining the conviction of murder, the Supreme Court of Washington said (p. 559) : "The appellants further argue that the testimony conclusively shows that at the time of the killing the larceny had been completed, and that they were not then engaged in the commission of that offense, as charged in the information. Whether the crime of larceny had been completed or was still being committed at the time of the killing is a question of fact, and that fact was properly submitted to the jury by the court when it said that in order to convict the defendants of the offense charged the state is required to prove, beyond a reasonable doubt, that at the time of the killing the appellants were engaged in the commission of a larceny of the automobile in question, and that while they were so engaged the killing was done. Under no circumstances can it be said, as a matter of law, that at the time of the killing the act of larceny had been completed. The appellants had taken the automobile but a short distance from the place they stole it, and when the killing occurred they were in the act of taking it still farther away. The mere fact that a few hours intervened between the time the automobile was taken from in front of the owner's house, and the time it was taken from the place where the appellants had left it does not—and cannot—conclusively show that the crime had been completed. Under all the circumstances, therefore, it was proper for the court to submit to the jury the question whether the appellants were in the act of committing larceny of the automobile when the shooting occurred." It would have been error on the part of the trial court to have directed a verdict of not guilty in favor of these appellants.

Misconduct is charged against one of counsel for the state. From a bill of exceptions it appears that a special

prosecuting attorney said of appellants in his argument to the jury: "That when they are caught with their pants down, what do they do, they put on the old plea of insanity." Appellants objected to this statement, and counsel for the prosecution continued: "I told the jury that was my opinion. I have a right to my opinion in this matter. I have not tried to interrupt them on the other side." Whereupon, the court said to the jury: "All remarks at this time are stricken from the record. The Court does not feel that coming up by way of argument the Court can sustain the motion on the objection, of course the jury understands it is purely a matter of argument. The motion and objection of the defendants, are overruled, and denied with exceptions separately and severally to each." This was followed by the appellants' motion "that the jury be discharged and the proceedings in this case be dismissed, and that the same be withdrawn from the jury." This motion was likewise denied, with exceptions.

Appellants rely for reversal on *Lewis* v. *State* (1894), 137 Ind. 344, 351, 36 N. E. 1110. There the prosecuting attorney said in his closing argument: " 'It is the history of criminal prosecutions, that if a defendant does not plead guilty before the court, he always goes upon the stand and denies the charge.' " After holding that these remarks were improper and prejudicial, this court said (p. 354):

"It is the law that when the party who is injured by the wrong (by improper argument) calls for the intervention of the court by an objection, it will not do for the court to remain silent, leaving the matter of misconduct with the offending party and the jury. The court is bound to interpose when so called upon, and if an improper and injurious statement has been made without excuse, the effect of it should be erased from the minds

of the jury then and there, by an emphatic and explicit admonition from the court.

"The jury should be made to understand that in making the statement counsel violated the propriety of his position, and that if they did not wholly disregard it they would violate their duty as jurors.

"The record discloses that the court, in this instance, remained silent and refused to interfere when the objection was made."

The cause was reversed. In the case at bar the court admonished the jury to the extent that it ordered counsel's remarks stricken from the record, and advised the jury that said remarks were purely a matter of argument. This distinguishes the case from the Lewis case quoted above. The remarks of counsel in the case before us were ill-advised, if not improper, and it is well that prosecuting officials should confine their arguments to a discussion of the evidence and the legal principles involved. In view of the timely and proper action of the trial judge, however, in ordering the remarks stricken out, and in telling the jury that said remarks were purely a matter of argument, we can not say that reversible error was committed. It may be assumed that the jury was governed, in its consideration of the case, by the observations made to it by the presiding judge. We would be unwarranted in ordering a reversal of the cause on this ground.

Error is also predicated upon the giving of eleven instructions by the court on its own motion, and on its refusal to give twenty-two instructions tendered by appellants. It can not be expected that we shall consider and discuss each of these thirty-three charges separately. It is sufficient to say that we have carefully read each of them and that we find no error in respect thereto. In that part of their brief devoted to the argument of the case, the appellants say, generally, that the instructions given

were voluminous and confusing, and that the matter of insanity was over-emphasized. The issue of unsoundness of mind was raised by the special pleas of both appellants, and the very nature of the subject placed on the trial court the obligation to advise the jury fully in that regard, inasmuch as instructions on the subject were requested by appellants.

After having fully considered every alleged error presented by the appellants, we have reached the conclusion that the judgment of the Shelby Circuit Court should be affirmed. It is so ordered.

### PETITION FOR STAY OF EXECUTION.

PER CURIAM—The appellants have this day filed in this court a petition for a stay of execution based upon the fact that they have filed a petition for a writ of error *coram nobis* in the Shelby Circuit Court. On yesterday, July 6, 1938, this court denied a petition for rehearing which extinguished the jurisdiction of this court over the case. This court is without power to grant stays of execution except in aid of its appellate jurisdiction over cases pending on appeal.

The petition for stay of execution is denied for want of jurisdiction in this court to grant the stay upon authority of *Diamond* v. *State* (1924), 195 Ind. 285, 144 N. E. 250, 466.