Lamar D. ALLEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A04–0704–CR–201.

Court of Appeals of Indiana.

Nov. 9, 2007.

Jeff Shoulders, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

After a jury trial, Lamar D. Allen was convicted of Class C felony Battery,[1] four counts of Class B felony Criminal Confinement,[2] Class B felony Carjacking,[3] and Class A misdemeanor Battery,[4] and subsequently sentenced to an aggregate sentence of sixteen years of incarceration. Allen contends that the State produced insufficient evidence to sustain his convictions for carjacking and one count of criminal confinement, the trial court abused its discretion in allowing three witnesses to testify, and the trial court abused its discretion in sentencing him. We affirm.

## FACTS

A short time before 1:00 p.m. on April 8, 2006, Allen was driving with his then-girlfriend Brandi Vaughn in Evansville. The pair saw a group "standing in [a] yard" and Allen, after asking Vaughn if she "used to talk to [one of the group] or whatever[,]" became angry. Tr. p. 21. At some point, Allen drew and pointed a handgun at Vaughn, hit her in the lip, and took her rings and threw them out of the window. Eventually, the pair arrived at

---

1. Ind.Code § 35–42–2–1(a)(3) (2006).

2. Ind.Code § 35–42–3–3(b)(2) (2006).

3. Ind.Code § 35–42–5–2 (2006).

4. Ind.Code § 35–42–2–1(a)(1) (2006).

Allen's aunt's home, where Allen struck Vaughn once more, knocking her to the ground. After Allen retrieved a shotgun from his aunt's home and placed it in the back seat, he drove for a while longer, stopping in front of a daycare center. While stopped, Allen shot Vaughn in the leg with the handgun, and she nonetheless managed to crawl into the daycare center and summon help. Allen drove off.

Shortly thereafter, H.S., who was driving with her sister J.S. and two-month-old daughter, came upon Allen as he was exiting the first car. Allen told H.S. that his name was "Mike" and that he needed a ride to his sick mother's home, for which he would pay her five dollars. Tr. p. 56. After H.S. parked in an alley behind his mother's home, Allen went inside and soon returned with five dollars and two sodas. In the meantime, police had learned where Allen's mother lived and had arrived, with Evansville Police Corporal James Allison pulling in behind H.S.'s car as Allen slid into the back seat. When H.S. asked if she should stop, Allen replied, "no, just keep going." Tr. p. 57. H.S. stopped when she heard Corporal Allison's siren, and Allen told her "not to stop[.]" Tr. p. 57–58.

When Corporal Allison approached the car on foot, Allen took his handgun out, pointing it first at himself but then at H.S., her daughter, and J.S. Although Allen asked H.S. if she "want[ed] to die" and told her to "drive, just drive[,]" she did not, and, after Allen told her to "get out so he could drive[,]" she removed the keys from the ignition and "hopped out of the front seat[.]" Tr. pp. 59, 168. As Corporal Allison approached even more closely, Allen "rolled out of the backseat, dropped down onto one knee," pointed his handgun at him, and said, "I will shoot you, I will shoot you." Tr. p. 269. Allen then moved to the front seat and searched for the keys. As Corporal Allison approached to within three feet, Allen turned, "dropped his right hand with the gun in down to his belt buckle, looked [him] right in the eye," and pointed the handgun at the top of Corporal Allison's chest. Tr. p. 274. At that point, Corporal Allison shot Allen in the head, incapacitating him.

The State initially charged Allen with Class A felony attempted murder, seven counts of Class B felony criminal confinement, Class B felony carjacking, Class C felony battery, five counts of Class D felony pointing a firearm, and Class D felony resisting law enforcement. Ultimately, Allen was convicted of Class C felony battery, four counts of Class B felony criminal confinement, Class B felony carjacking, and Class A misdemeanor battery, and subsequently sentenced to an aggregate sentence of sixteen years of incarceration.

## DISCUSSION AND DECISION

### Standard of Review for Issues I and II

■ Allen challenges the sufficiency of the evidence to support his convictions for carjacking and one count of criminal confinement. Our standard of review for challenges to the sufficiency of the evidence supporting a criminal conviction is well-settled:

In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. We will affirm the conviction if there is probative evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt.

*Vitek v. State*, 750 N.E.2d 346, 352 (Ind. 2001) (citations omitted).

## I. Carjacking

Indiana Code section 35–42–5–2 provides that "[a] person who knowingly or intentionally takes a motor vehicle from another person or from the presence of another person ... by using or threatening the use of force on any person; or ... by putting any person in fear ... commits carjacking, a Class B felony." Allen contends that the State failed to prove that he committed carjacking because it failed to present any evidence that he drove off with H.S.'s car. We cannot agree. Essentially, Allen contends that the "taking" of the motor vehicle must be accomplished by moving the vehicle away from the victim and not vice versa. To support this contention, Allen relies on *Burton v. State,* 706 N.E.2d 568, 569 (Ind.Ct.App.1999), *trans. denied,* in which we observed that the carjacking statute "specifically contemplates that the person who takes the vehicle leaves the person from whom the vehicle is taken at the scene."

As an initial matter, while it may be true that the term "carjacking" usually brings to mind an image of an assailant forcing the driver out of a car and driving off, *i.e.,* the situation described in *Burton,* we conclude that this is not the only fact pattern covered by Indiana Code section 35–42–5–2. The fact that a statute contemplates a certain fact pattern does not mean that it is *limited* to that fact pattern if its plain language does not so provide. With that in mind, we further note that Indiana's carjacking statute is clearly based on its robbery statute, differing only in the specific nature of the property described and the degree of the base crime.[5] Given the carjacking statute's heritage, we see no reason that the body of Indiana law applying to robbery should not generally apply with equal force to carjacking.

In the robbery context, it is well-settled that "[t]o constitute robbery there must be an asportation." *Neal v. State,* 214 Ind. 328, 341, 14 N.E.2d 590, 596 (1938) (citation omitted). "In other words, it must appear that the property was taken from the possession of the victim into that of the robber." *Id.,* 14 N.E.2d at 596 (citation omitted). Nothing in the above passage requires (despite the use of the word "asportation") actual movement of the good in question, be it a car or anything else. This interpretation of the *Neal* language is consistent with this court's application of the principle in case law.

For example, this court upheld a robbery conviction in a case where the defendant's threatening behavior caused a store clerk to flee, whereupon the defendant and his accomplice absconded with the store's cash register. *Sutton v. State,* 422 N.E.2d 430, 431 (Ind.Ct.App.1981). The *Sutton* court observed that

> a defendant is as much guilty of robbery by removing the victim from the presence of his property by force or fear as he would be by removing the property directly from the victim. Either way, the defendant parts the victim from his property by force or fear, and then gathers the possession unto himself. This is the proscribed conduct.

*Id.* at 433 (citing *Wash v. State,* 408 N.E.2d 634 (Ind.Ct.App.1980); *Paulson v. State,* 181 Ind.App. 559, 393 N.E.2d 211 (1979)).

We conclude that one need not physically move the motor vehicle away from the victim in order to commit carjacking.

---

**5.** Indiana Code section 35–42–5–1 provides, in relevant part, that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person ... by using or threatening the use of force on any person; or ... by putting any person in fear ... commits robbery, a Class C felony."

Forcing the victim away from the vehicle is sufficient, and that is precisely what happened here. Brandishing a handgun, Allen asked H.S. if she wanted to die and then told her to get out of her vehicle so that he could drive, thereby removing her from the presence of her property. A jury was free to infer from this evidence that H.S. left her vehicle due to a threat of the use of force, thereby establishing carjacking. The State produced sufficient evidence to sustain Allen's conviction for carjacking.[6]

## II. Criminal Confinement of Vaughn

■ Indiana Code section 35–42–3–3 provides, in relevant part, that

(a) A person who knowingly or intentionally:

. . .

(2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement. . . .

(b) The offense of criminal confinement defined in subsection (a) is:

. . . .

(2) a Class B felony if it:

(A) is committed while armed with a deadly weapon;

(B) results in serious bodily injury to a person other than the confining or removing person[.]

Allen contends only that the State produced insufficient evidence that he used force or the threat of force to move Vaughn from one place to another. Allen maintains that the evidence establishes that Vaughn went with him willingly. Be-

fore arriving at his aunt's house, Allen struck Vaughn in the lip and pointed a handgun at her head. At his aunt's house, Allen hit Vaughn again, knocking her down, screamed at her, and again pointed the handgun at her head. Allen also threatened Vaughn with a shotgun retrieved from his aunt's house before finally shooting Vaughn in the leg. The jury was free to infer from this evidence that Allen moved Vaughn from one place to another by force and/or the threat of additional force. Allen's argument in this regard is merely an invitation to reweigh the evidence, which we may not do.

## III. Vaughn's, H.S.'s, and J.S.'s Testimony

■ Allen contends on appeal that the trial court abused its discretion in allowing the State to call Vaughn, H.S., and J.S. on the basis that the State allegedly only called them in order to impeach them. Allen, however, failed to object to their testimony on this basis at trial and has therefore waived the issue for appellate consideration. *See Kubsch v. State*, 784 N.E.2d 905, 923 (Ind.2003) ("Failure to object at trial to the admission of evidence results in waiver of that issue on appeal.").

## IV. Sentence[7]

■ Allen contends that the trial court abused its discretion in sentencing him and that his sentence is inappropriate. Allen's offenses were committed after the April 25, 2005, revisions to Indiana's sentencing scheme. Under this new scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868

---

**6.** Allen does not argue that his act of moving into the front seat of a car without the ignition key was insufficient to establish his possession of the car, and we therefore do not address the question.

**7.** The State contends that Allen has waived any sentence challenge for failing to include a copy of his presentence investigation report ("PSI") in his Appendix. We conclude, however, that the record is adequate to allow us to review his claim of abuse of sentencing discretion even without the PSI.

N.E.2d 482, 490 (Ind.2007). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490–91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, under the new statutory scheme, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Id.*

In sentencing Allen, the trial court found, as aggravating circumstances, his criminal record, that the victim of two of his crimes was under the age of twelve, and that he had previously violated the terms of his probation. The trial court found Allen's history of depression to be a mitigating circumstance. As for Allen's claim that the trial court assigned his criminal record too much aggravating weight, *Anglemyer* makes clear that we

cannot review the trial court's weighing of aggravating or mitigating circumstances for an abuse of discretion. *Id.*

Allen also claims that the trial court abused its discretion in failing to find his alleged remorse and the alleged undue hardship on his child to be mitigating. As for Allen's claim of remorse, "substantial deference must be given to a trial court's evaluation of remorse." *Corralez v. State*, 815 N.E.2d 1023, 1025 (Ind.Ct.App.2004). "The trial court, which has the ability to directly observe the defendant and listen to the tenor of his or her voice, is in the best position to determine whether the remorse is genuine." *Id.* First, Allen's expressions of remorse came in the form of a letter to the trial court and his statement at sentencing, neither of which the trial court was required to credit. Moreover, we note that at sentencing, Allen seemed to blame his actions on his use of alcohol that day and also claimed that "[t]he victim gave false testimonies." Tr. p. 420. As for Allen's claim that his incarceration would work an undue hardship on his son, there is no indication in the record that Allen has any significant relationship with his son, much less any evidence regarding the relationship's particulars. The trial court did not abuse its discretion in this regard.[8]

The judgment of the trial court is affirmed.

NAJAM, J., and MATHIAS, J., concur.

---

**8.** Although Allen claims to challenge the appropriateness of his sentence and mentions our power under Indiana Appellate Rule 7(B) to revise sentences that are "inappropriate in light of the nature of the offense and the character of the offender[,]" he develops no independent argument on this basis. As such, Allen has waived this claim for failure to

present a cogent argument. *See Howard v. State*, 755 N.E.2d 242, 246 n. 4 (Ind.Ct.App. 2001); Ind. Appellate Rule 46(A)(8)(a). Even if Allen *had* cogently argued this claim, however, it is difficult to see how we could have taken a full measure of Allen's character absent the PSI.