## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 13 2016, 9:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kore Buchanan, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 13, 2016 <br><br> Court of Appeals Case No. <br> 89A01-1511-CR-1900 <br><br> Appeal from the Wayne Superior Court <br><br> The Honorable Charles K. Todd, Jr. <br><br> Trial Court Cause No. <br> 89D01-1408-MR-3 |

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Kore Buchanan was convicted of Murder, a felony, and sentenced to sixty years with two years suspended to probation. On appeal, Buchanan presents a single challenge to his sentence, which we restate as the following two:

> 1. Did the trial court abuse its discretion in identifying aggravating and mitigating circumstances?

> 2. Is the sentence imposed inappropriate in light of the nature of the offense and character of the offender?

[2] We affirm.

## Facts & Procedural History

[3] Sixteen-year-old Buchanan[1] and seventeen-year-old C.W. were friends since childhood. On May 17, 2014, Buchanan became very angry at C.W. after being told about an alleged incident between C.W. and another mutual friend. Later that night, Buchanan and Deandre Plant met up with Michael Pruitt, David Maish, and Maish's girlfriend at Pruitt's house. Buchanan started talking to Plant about retaliating against C.W. Buchanan stated that he would "handle his business" and talked about "beating [C.W.'s] ass" and killing him. *Transcript* at 433, 434. Buchanan and Plant then formulated a plan to kill C.W.

---

[1] At the time of the events described herein, Buchanan was one month shy of his seventeenth birthday.

[4] At Buchanan's request, Pruitt retrieved five aluminum bats from under his porch and then joined the others who had gone next door to Maish's house. Pruitt and Maish wiped down the bats to remove any fingerprints that were on them and then Maish gave Buchanan and Plant latex gloves to "cover up their fingerprints." *Id.* at 531. Maish then proceeded to show Buchanan and Plant ways in which to conceal the baseball bats in the jacket sleeves or in the front of their pants.

[5] Buchanan and Plant concealed the bats and left Maish's house. Pruitt followed closely behind them to serve as a lookout. On their way to get C.W., Buchanan and Plant hid their bats in an alley. Buchanan and Plant then went and woke C.W. and got him to leave with them. As the three were walking down the street, Buchanan and Plant convinced C.W. to go into the alley where they had hidden their bats under the guise of needing to urinate. Pruitt stood watch at the end of the alley to alert Buchanan and Plant if anyone came by.

[6] As C.W. was urinating, Buchanan hit him in the head with a baseball bat. Plant proceeded to hit C.W. in the face with the second baseball bat. C.W. repeatedly screamed for "help" and "plead[ed] with them to stop." *Id.* at 453. Buchanan and Plant ignored C.W.'s pleas and continued beating him with the bats for about five minutes. C.W. was hit at least seventeen separate times in the face and head, causing numerous skull fractures and brain hemorrhages. C.W. also sustained contusions on his leg and a fracture to his hand from trying to protect himself. The alley was covered in C.W.'s blood, with blood splatter that reached a height of six feet and a width of twenty-one feet. C.W. died as a

result of massive head injuries caused by multiple blunt force trauma to his head.

[7] Afterward, Buchanan and Plant rejoined Pruitt and repeatedly boasted "it's done." *Id.* The three left C.W.'s body lying in the alley. As they walked away from the alley, Buchanan suggested that they dispose of the bats in an abandoned garage. They then returned to Maish's house, where Buchanan and Plant continued to boast about killing C.W. Buchanan and Plant were covered with blood, so they each showered and changed clothes. Pruitt hid the clothing in a garbage bag in Maish's basement. Some clothing was later burned in a fire pit in the back yard.

[8] As the night went on, Buchanan, Plant, and Pruitt continued discussing with several friends how they had killed C.W. in the alley. They stated that they struck C.W. with the bats "like 40 times." *Id.* at 682. At some point, Pruitt, Plant, and Maish went back to the alley to see if C.W. was still alive. After finding that C.W. had no pulse, Pruitt took off C.W.'s shoes, which he later disposed of in a dumpster. Buchanan, Plant, Pruitt, and Maish talked about burning C.W.'s body "to get rid of the evidence." *Id.* at 561. They also decided their alibi would be that they were together all night and planned to take pictures and post them on Facebook as proof.

[9] The group then spent the rest of the night hanging out. Buchanan behaved normally after the murder and even joked that C.W. would "see his baby

Jesus." *Id.* at 563. Buchanan also stated that he "kinda" felt bad about what he had done, but that he "wouldn't go back and change it." *Id.* at 739.

[10] Around 8 a.m. on May 18, 2014, Alan Garrod found C.W.'s body in the alley and called 911. Later that morning, Buchanan called his then-girlfriend and told her that he "needed to get out of town," but did not elaborate as to why. *Id.* at 726. A few days later, Buchanan talked to his girlfriend a second time and told her the details of what happened to C.W. In the weeks that followed C.W.'s murder, Buchanan contacted a relative of C.W.'s and threatened that there would be a "bang out" or shooting if she told the police where he was hiding out. *Id.* at 424. Because Buchanan persisted in making threats against C.W.'s relative, she eventually told police where he was located.

[11] On August 25, 2014, the State charged Buchanan with murder, a felony. A four-day jury trial commenced on September 28, 2015, at the conclusion of which the jury found Buchanan guilty as charged. The trial court held a sentencing hearing on October 21, 2015, during which Buchanan presented evidence and the victim's father testified as the victim's representative. The trial court sentenced Buchanan to sixty years with two years suspended to probation. Buchanan now appeals. Additional facts will be provided where necessary.

## Discussion & Decision

[12] We begin by noting that Buchanan frames the issue on appeal as a single challenge regarding the appropriateness of his sentence. Although Buchanan

provides us with the standard of review for challenges made to the appropriateness of a sentence, his argument is entirely focused on whether the trial court abused its discretion in identifying aggravating and mitigating circumstances. As our Supreme Court has made clear, inappropriate sentence and abuse of discretion claims are to be analyzed separately. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Here, Buchanan makes no argument relating to the nature of the offense and the character of the offender for purposes of an Ind. Appellate Rule 7(B) argument. Where a defendant fails to develop an independent argument to support an inappropriate sentence claim, the defendant waives the issue for review. *See Allen v. State*, 875 N.E.2d 783, 788 n.8 (Ind. Ct. App. 2007). Waiver notwithstanding, we will address the independent sentencing arguments separately.

### 1. Abuse of Discretion

[13] Buchanan argues that the trial court abused its discretion in considering his history of delinquent activity as an aggravating circumstance. Buchanan also argues that the trial court failed to afford sufficient mitigating weight to his age at the time of the murder, his difficult childhood, and his mental illness.

[14] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer*, 868 N.E.2d at 490. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable,

probable, and actual deductions to be drawn therefrom. *Id*. at 490. A trial court may be found to have abused its discretion by (1) failing to enter a sentencing statement; (2) entering a sentencing statement that includes reasons not supported by the record; (3) entering a sentencing statement that omits reasons clearly supported by the record and advanced for consideration; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490-91. Because a court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating circumstances or mitigating circumstances," a trial court is no longer obligated to weigh aggravating and mitigating factors against each other when imposing a sentence. *See Richardson v. State*, 906 N.E.2d 241, 243 (Ind. Ct. App. 2009) (citing *Anglemyer*, 868 N.E.2d at 491).

[15] Buchanan first argues that the trial court abused its discretion in identifying his juvenile history of delinquent behavior as an aggravating circumstance. Specifically, Buchanan asserts that the trial court erroneously considered his delinquency adjudications in a prior cause as two separate felonies if committed by an adult when his reading of the record indicates that the two offenses merged into a single felony if committed by an adult. Buchanan also argues that the trial court erroneously found that he had violated probation even though such was never adjudicated.

[16] A defendant's criminal or juvenile history is a proper aggravating circumstance. Ind. Code § 35-38-1-7.1(a)(2); *Williams v. State*, 838 N.E.2d 1019, 1021 (Ind. 2005). Here, Buchanan was only sixteen years old when he committed the

instant offense and had already accumulated a significant juvenile history. The pre-sentence investigation report (PSI) and accompanying addendum indicate that in 2011, Buchanan had two referrals for criminal mischief and habitual disobedience of a parent, guardian, or custodian with no formal adjudication. That same year, Buchanan was adjudicated a delinquent for Class B felony burglary and Class D felony theft, if committed by an adult. He was sentenced to two years of juvenile probation, but violated that probation by being arrested for intimidation. After Buchanan was placed in a juvenile detention center, he again intimidated and assaulted a staff member. As a result of that conduct, petitions for modification were filed alleging that he committed Class A misdemeanor intimidation and Class D felony intimidation. Buchanan admitted to the allegations.

[17] At the start of the sentencing hearing in this case, the trial court thoroughly reviewed Buchanan's history with him, explicitly presenting the details as set forth above. Buchanan assured the trial court that each part of his juvenile history, as represented, was accurate, including that he had two prior adjudications. The record does not support Buchanan's claim that he had only one juvenile adjudication. Even if it were the case that Buchanan's criminal history consisted of only one adjudication for Class B felony burglary, such would be sufficient to support his criminal history as an aggravating circumstance. The trial court did not abuse its discretion in identifying Buchanan's history of delinquent activity to be an aggravating circumstance.

[18] To the extent that Buchanan challenges the weight the trial court afforded to such aggravator, his argument fails. The relative weight assigned to proper aggravating circumstances is not subject to review for an abuse of discretion.[2] *Anglemyer*, 868 N.E.2d at 491.

[19] Next, Buchanan argues the trial court did not afford sufficient mitigating weight to his young age at the time of the murder. He challenges the trial court's determination that the mitigating weight of his young age was "somewhat tempered with the nature of the . . . act committed in this particular case." *Transcript* at 921. As noted above, the trial court no longer has an obligation to weigh aggravating and mitigating circumstances and cannot be found to have abused its discretion based on the weight it assigned to such circumstances. *See Anglemyer*, 868 N.E.2d at 491. Furthermore, the trial court was not obligated to weigh or credit the mitigating circumstances in the manner Buchanan suggested. *Harlan v. State*, 971 N.E.2d 163, 170 (Ind. Ct. App. 2012). Buchanan has not established an abuse of discretion.

[20] With regard to Buchanan's childhood, the court acknowledged that "by no means did Mr. Buchanan have what would be considered an ideal upbringing," but explained that to the extent it was mitigating, it was "minimal in nature." *Transcript* at 922. The trial court further explained that it found no correlation

---

[2] In any event, we note that the trial court stated that it did not assign significant aggravating weight to Buchanan's history and expressly stated that it afforded no aggravating weight to those offenses for which there was no clear disposition or adjudication.

between his upbringing and the instant offense, and especially the manner in which the murder was carried out. The court's determination in this regard is not subject to review for abuse of discretion.

[21] Buchanan also asserts that the trial court abused its discretion in failing to identify and give significant mitigating weight to his mental illness. While the PSI indicates that in 2011, Buchanan was diagnosed with dysthymic disorder, a general anxiety disorder, oppositional defiant disorder with features of an anxiety disorder, and relational problems, Buchanan denied ever having been diagnosed with any specific mental illness and stated he has never been prescribed medications for mental health issues. The trial court was not obligated to make a finding regarding mental illness or explain why it did not find such to be significant. *See Flickner v. State*, 908 N.E.2d 270, 273 (Ind. Ct. App. 2009). In any event, we note there is conflicting evidence in the record with regard to whether Buchanan suffers from a mental illness. Buchanan has not established that this proffered mitigating factor is both significant and clearly supported by the record. *See id*. The trial court did not abuse its discretion.

## 2. Inappropriate Sentence

[22] Buchanan argues that the sixty-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and character of the offender. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d

1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015).  Pursuant to App. R. 7, our Supreme Court authorized this court to perform the same task.  *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).  Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7).  "Sentence review under Appellate Rule 7(B) is very deferential to the trial court."  *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).  "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)."  *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).  Buchanan bears the burden on appeal of persuading us that his sentence is inappropriate.  *See Conley*, 972 N.E.2d at 876.

[23]    To assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense.  Buchanan was convicted of murder, a felony.  The advisory sentence for murder is fifty-five years, with a minimum and maximum sentence of forty-five and sixty-five years, respectively.  Ind. Code § 35-50-2-3.  Buchanan was sentenced to sixty years, with two years suspended.

[24] As noted above, Buchanan failed to challenge his sentence with respect to his character and the nature of his offense. He has therefore waived his argument that his sentence is inappropriate. *See Allen*, 875 N.E.2d 788 n.8.

[25] Waiver notwithstanding, it is evident that the gruesome nature of this crime supports the sentence imposed. Buchanan meticulously orchestrated the killing of his seventeen-year-old friend. In preparation, Buchanan engaged the help of three other friends to beat C.W. to death with baseball bats. Numerous steps were taken beforehand to ensure that no evidence of the crime would be found, including wiping down the baseball bats to remove fingerprints, the wearing of latex gloves, the concealment of the bats, and the use of Pruitt as a lookout. Buchanan then lured his unsuspecting, defenseless friend into an alley in the middle of the night and while C.W. was urinating, Buchanan and Plant began hitting C.W. in the head and face with baseball bats. They ignored C.W.'s pleas and continued to beat him. C.W. sustained numerous skull fractures and brain hemorrhages as well as bruising to his leg and a fractured hand from trying to protect himself. Buchanan and Plant were covered in C.W.'s blood and blood splatter at the scene covered an area six feet high and twenty-one feet wide. This was more than a murder by beating; it was a brutal, savage attack.

[26] Buchanan's conduct after the murder is equally as telling that the sentence imposed is not inappropriate. When Buchanan and Plant were finished, they simply walked away and left C.W. lying in the alley. Buchanan ensured that the bats and the bloody clothing were disposed of and he returned to his friend's house to take a shower. Buchanan proceeded to boast about the murder

throughout the night, participated in creating an alibi, and even discussed burning C.W.'s body. He also joked that C.W. was going to "see his baby Jesus." *Transcript* at 563. After C.W.'s body was discovered, Buchanan took steps to avoid being located by the police and went so far as to threaten a relative of C.W.'s who knew where he was hiding out. The circumstances of the crime heavily support the sentence imposed.

[27] Buchanan's character also shows that the sentence imposed is not inappropriate. Although only sixteen years old at the time of the murder, Buchanan had already accumulated juvenile adjudications for burglary and theft and violated terms of probation by committing acts of intimidation. He had been expelled from school multiple times and eventually stopped attending altogether and did not pursue education or employment opportunities thereafter. Buchanan admitted that he began drinking alcohol at the age of eleven and that he began regularly drinking and using marijuana at thirteen years old. He also admitted that he had illegally experimented with prescription pills. Perhaps most telling of his character is that even after he murdered his best friend, Buchanan admitted that he "kinda" felt bad about what he had done, but that he "wouldn't go back and change it." *Id*. at 739.

[28] Based on the foregoing, we conclude that Buchanan's sixty-year sentence is not inappropriate.

[29] Judgment affirmed.

Bailey, J. and Bradford, J., concur.